**Ex parte James Carl Lee DAVIS.**

**No. 72247.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1996.

Rehearing Denied March 19, 1997.

---

218

Roy Greenwood, Austin, for appellant.

Margaret Portman Griffey, Laura Bayouth Popps, Asst. Attys. Gen., Matthew Paul, State's Atty., Austin, for State.

## OPINION

OVERSTREET, Judge.

Applicant has filed a subsequent application for post-conviction writ of habeas corpus raising two allegations challenging the validity of his conviction and resulting death sentence. He had previously filed an application which this Court denied in 1992. He has also filed a motion seeking to declare certain portions of the newly-enacted Article 11.071, § 5, V.A.C.C.P. unconstitutional. We filed and set this cause for submission and directed the parties in briefing "to provide particular attention and emphasis on applicant's motion to declare certain portions of Art. 11.071, supra, unconstitutional." The parties have provided such briefing.

At issue is the constitutionality of Art. 11.071, § 5's provisions for subsequent applications for writ of habeas corpus, specifically that a court may not consider such subsequent application unless the application contains sufficient specific facts establishing various things. Applicant insists that such restriction on consideration of subsequent application is unconstitutional in various ways, while the State insists that such is not.

### I.

Applicant's allegations throughout number one avers that the provisions of Article 11.071, V.A.C.C.P., violate the separation of powers clause of Tex. Const., art. II, § 1, which provides for the separation of powers of the three departments of Texas government; Judicial, Legislative, and Executive. Applicant suggests that Art. 11.071's provisions infringe upon the inherent judicial pow-

ers of this Court which are granted in Tex. Const., art. V, § 5. He insists that the statute attempts to legislate solely judicial functions of interpretation, application and construction, and are thus not procedural in nature since absolute limitations are placed in considering the merits of a habeas corpus application without regard to the reasons these issues had not been presented previously.

Tex. Const., art. I, § 12 while providing that the writ of habeas corpus is a writ of right and shall never be suspended, also explicitly states that "[t]he Legislature shall enact laws to render the remedy speedy and effectual." Thus, by constitutional mandate, the Legislature is empowered to enact, and obviously has enacted, laws effecting the implementation of the right to writ of habeas corpus. The separation of powers provision may be violated in either of two ways: 1) when one branch of government assumes, or is delegated, to whatever degree, a power that is more properly attached to another branch; or 2) when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex.Cr. App.1990).

Article 11.071 simply provides for the methodology for rendering the writ of habeas corpus and does not prevent this Court from exercising its constitutional powers over the writ of habeas corpus. Article 11.071, while containing some directions and requirements for filing applications for such writs, does not prevent the filing and consideration thereof by this Court if those directions and requirements are complied with. This is comparable to Tex. Const., art. I, § 15 providing for the right to trial by jury and that the Legislature shall pass such laws as needed to regulate such, with the Legislature then passing Chapters 33 through 37 of the Code of Criminal Procedure setting out procedures and requirements for employing that right.

We find no violation of the separation of powers clause and overrule applicant's first ground of error.

## II.

Applicant's ground of error number two claims that the provisions of Article 11.071 violate the provisions of Tex. Const., art. I, § 12, in improperly suspending certain fundamental rights to habeas corpus relief to a certain class of litigants without constitutional amendment. As noted above, Tex. Const., art. I, § 12 provides that the writ of habeas corpus is a writ of right and shall never be suspended. Applicant insists that Article 11.071 "suspends" certain rights by limiting a capital applicant to a single habeas corpus application, sometimes under specific time guidelines, particularly in view that traditionally subsequent applications for habeas corpus relief in death penalty cases have been common and routine. Nevertheless, he does acknowledge that frivolous and repeated attempts to invoke the habeas corpus remedy have been held to be an abuse of the writ by this Court. Applicant also points to Tex. Const., art. I, § 29 which declares that everything in the Texas Bill of Rights, including art. I, § 12, is excepted out of the general powers of government and shall forever remain inviolate, with all laws contrary thereto being void.

However, Article 11.071 does not "suspend" the right to writ of habeas corpus. As stated above, Article 11.071, pursuant to the constitutional mandate to the Legislature to enact laws to render the remedy speedy and effectual, simply provides for the methodology for rendering and effecting the implementation of the right to writ of habeas corpus and does not prevent this Court from exercising its constitutional powers over the writ of habeas corpus. Accordingly, we overrule applicant's second ground of error.

## III.

Applicant's ground of error number three claims that the provisions of Article 11.071, in being applied retroactively to death penalty litigants, limits certain fundamental rights to habeas corpus, thus violating Tex. Const., art. I, § 16's prohibition against ex post facto or retroactive laws. Under Texas or United States constitutional analysis, an ex post facto law: 1) punishes as a crime an act previously committed which was innocent

when done; 2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed; or 3) deprives a person charged with a crime of any defense available at the time the act was committed. *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex.Cr.App.1994); *Lopez v. State*, 928 S.W.2d 528, 533 (Tex.Cr.App.1996); *Johnson v. State*, 930 S.W.2d 589, 591 (Tex. Cr.App.1996). Clearly Article 11.071 does not do any of those things, thus it does not operate as an ex post facto law. *French v. State*, 830 S.W.2d 607, 608 (Tex.Cr.App.1992).

■ In *Grimes v. State*, 807 S.W.2d 582, 587–88 (Tex.Cr.App.1991) we noted that the Texas constitutional prohibition against a "retroactive law" has never been made applicable to statutes merely affecting matters of procedure which do not disturb vested, substantive rights, and that applying Article 44.29(b), V.A.C.C.P. to cases that had been tried prior to its effective date did not violate that prohibition. In light of our holding above that Article 11.071's provisions are the Legislature's enactment effecting and implementing the constitutional right of writ of habeas corpus, we are constrained to hold that such provisions in the Code of Criminal Procedure are indeed procedural and are thus outside the purview of the "retroactive law" prohibition. Accordingly, we overrule applicant's third ground of error.

### IV.

■ Applicant's ground of error number four claims that the provisions of Article 11.071 violate the equal protection clauses of Tex. Const., art. I, § 3 and U.S. Const., amend. XIV, in that Article 11.071 is being applied retroactively to death penalty litigants while being applied prospectively only to non-death penalty litigants in Article 11.07, V.A.C.C.P., in an arbitrary and capricious fashion without rational reason therefor. Applicant quotes the amendatory act, Acts 1995, 74th Leg., ch. 319, § 7(c), which states that the change in law by Article 11.07 as amended applies, as to felons not under a sentence of death, only to an application for a writ of habeas corpus filed on or after the effective date of the Act while those filed before the effective date of the Act would be covered by the law in effect when such an application was filed.

Applicant suggests that that language indicates that under Article 11.07, non-death sentenced felons are not being retroactively penalized for having previously filed post-conviction applications for habeas corpus, while under Article 11.071, death-sentenced felons are being so penalized. However, Articles 11.07 and 11.071 both include similar restrictions and limitations on the filing of subsequent applications for writ of habeas corpus with both statutes becoming effective September 1, 1995. Both contain provisions that the merits of a subsequent application may not be considered unless the application contains sufficient specific facts establishing that certain conditions have been met. *See* Article 11.07, § 4 and Article 11.071, § 5. The amendatory act's provisions for applying the prior statutory procedures for applications filed prior to the September 1, 1995 effective date of amended Article 11.07 in no way annuls the applicability of the amended § 4 provisions for applications filed after that effective date. Death penalty felons face similar restrictions when filing applications after the same September 1, 1995 effective date of Article 11.071. Applicant's fourth ground is overruled.

### V.

■ Applicant's ground of error number five claims that the provisions of Article 11.071 violate the due process and due course of law provisions of Tex. Const., art. I, §§ 19 and 26 and U.S. Const., amend. XIV, in that the statute is made retroactive to a certain class of litigant, improperly limiting fundamental rights to habeas corpus consideration. He suggests that under the new statute the trial court is ordered "completely 'out of the loop'" with regard to the determination of any relevant issues on a second application for writ of habeas corpus. He notes that while Article 11.071 sets out a series of exceptions to the barring of consideration of a second application, it provides for no trial court evidentiary process to allow an applicant to present evidence for the record in support of a claim that he falls under one of the exceptions. He also points out that the

trial court is deprived of the opportunity to appoint counsel for the applicant on the subsequent application. He avers that the legislative statutory definition for the unavailability of the factual basis for a claim usurps the judicial function of providing definitions based upon common law considerations, and that the determination of "reasonable diligence" is a factual issue itself which can only be proven by some sort of evidentiary hearing conducted in the trial court, which is now prohibited.

Applicant's argument for a violation of due process and due course of law is not persuasive. The gist of his claim appears to be that the new Article 11.071 requirements for filing a subsequent application for habeas corpus are in some instances too stringent to be met; however, he makes no showing as to the particulars of his situation in meeting those requirements. He also makes no showing of traditional procedural due process analysis. *See, e.g., Ex parte Montgomery,* 894 S.W.2d 324 (Tex.Cr.App.1995). We overrule applicant's fifth ground.

## VI.

■ Applicant's ground of error number six claims that the provisions of Article 11.071 violate the provisions of Tex. Const., art. I, § 10 and U.S. Const., amends. VI and XIV, in that said statute retroactively renders him without full effective assistance of counsel during the first habeas corpus case. He claims that with the new statute providing that an applicant "shall be represented by competent counsel" unless he, after a hearing, has intelligently and voluntarily elected to proceed pro se, counsel must be competent and constitutionally "effective," but that his counsel for his initial habeas corpus application did not provide effective assistance of counsel. He insists that this retroactive scheme of Article 11.071 has denied him the right of effective assistance of counsel in that it deprived counsel at that time of the benefits of being properly appointed and funded in order to provide sufficient time and resources to adequately investigate his case.

1. An amici curiae brief also has been filed by The Texas Criminal Defense Lawyers Association,

Applicant's initial application for habeas corpus relief was received in 1992 and denied by this Court. We do not see how this statute, effective September 1, 1995, could have rendered applicant's representation by counsel in 1992 ineffective. Ground six is overruled.

## VII.

■ Applicant's ground of error number seven claims that the provisions of Article 11.071 violate the provisions of Tex. Const., art. I, § 13's open courts provision in that he "is being denied a full and fair 'remedy' for his new habeas claims." Tex. Const., art. I, § 13 includes provisions that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Applicant insists that such requires meaningful legal remedies and that the restrictions of Article 11.071 do not provide such. As discussed above, Article 11.071 does not create an absolute bar to a second application for habeas corpus, but rather places restrictions and conditions on how and when one can exercise the right of habeas corpus; however, the right is in no way abrogated. Accordingly, we overrule applicant's seventh ground.

## VIII.

After having overruled all seven of applicant's grounds of error, and observing that applicant's "Second Application for Postconviction Habeas Corpus" does not make Article 11.071, § 5's requisite showing for a subsequent application, we dismiss the application as an abuse of writ under that section. Therefore, our order of January 2, 1996 granting a stay of execution is hereby vacated.

McCORMICK, Presiding Judge, concurring.

In this case, applicant presents various challenges to the constitutionality of Article 11.071, V.A.C.C.P.[1] I join the Court's opinion

The Texas Civil Rights Project, and The Criminal Justice Clinic of St. Mary's University School of

rejecting these challenges with the understanding that the Court effectively holds that Article 11.071 contains the *exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction under Article 5, Section 5, of the Texas Constitution, to grant habeas corpus relief to an applicant seeking relief from a judgment imposing a penalty of death. I write separately to more fully address the contentions contained in the briefs that were filed in this case.

Applicant was convicted of capital murder and sentenced to death in March 1985. This Court affirmed applicant's conviction and death sentence in September 1989, and the United States Supreme Court denied applicant's petition for writ of certiorari in May 1990. *Davis v. State*, 782 S.W.2d 211 (Tex. Cr.App.1989), cert. denied, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990).

In June 1990, applicant filed his first application for state habeas corpus relief in this Court under former Article 11.07, V.A.C.C.P.[2] This Court denied habeas corpus relief in June 1992.

In September 1992, applicant sought federal habeas corpus relief in the United States District Court for the Western District of Texas. In November 1993, this federal district court conditionally granted applicant relief from his death sentence. In April 1995, the Fifth Circuit Court of Appeals reversed the federal district court and reinstated applicant's death sentence, and the United States Supreme Court denied applicant's petition for writ of certiorari in November 1995. *Davis v. Scott*, 51 F.3d 457 (5th Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

In December 1995, applicant filed his second application for state habeas corpus relief in this Court. In January 1996, this Court filed and set this case for submission to address applicant's constitutional challenges to Article 11.071.

## I

I set out a brief overview of Article 11.071. The 1995 Legislature added Article 11.071 and made it effective September 1, 1995.[3] Article 11.071 sets out the procedures for the filing of all *original* habeas corpus petitions in death penalty cases in which conviction occurred after September 1, 1995. See Article 11.071, Section 4(a), V.A.C.C.P. Article 11.071, Section 4(a), also sets out the procedures for the filing of an *original* habeas corpus application by an applicant "who was convicted before September 1, 1995, does not have an *original* application for a writ of habeas corpus under [former] Article 11.07 pending on September 1, 1995, and has not previously filed an application under [former] Article 11.07." (Emphasis Supplied).

Article 11.071, Section 4(a), sets out when an original habeas corpus application is considered timely filed. If an applicant has previously filed a habeas corpus application, or if an applicant has not timely filed an original habeas corpus application under Article 11.071, Section 4(a), an applicant must establish one of the exceptions contained in Article 11.071, Section 5(a), to permit this Court to consider the merits of a successive habeas corpus petition or the merits of an untimely filed original habeas corpus petition. See Article 11.071, Sections 5(a)(1), (2), (3). The only exception to this is a successive habeas corpus petition "pending on September 1, 1995." See Article 11.071, Section 4(a) (sets out when an original habeas corpus petition must be filed for an applicant who "does not have an original application for a writ of habeas corpus under [former] Article 11.07 pending on September 1, 1995, and has not previously filed an application under [former] Article 11.07").

The 1995 Legislature also amended Article 11.07, V.A.C.C.P., to set out the habeas corpus procedures when an applicant "seeks [habeas corpus] relief from a felony judg-

---

Law. They also claim Article 11.071 is unconstitutional.

2. Acts 1965, 59th Leg., Ch. 722, p. 317, as amended by Acts 1967, 60th Leg., Ch. 659, Section 7, effective August 28, 1967, as amended by Acts 1973, 63rd Leg., Ch. 465, Section 2, effec-

tive June 14, 1973, as amended by Acts 1977, 65th Leg., Ch. 789, Section 1, effective August 29, 1977, as amended by Acts 1979, 66th leg., Ch. 451, Section 1, effective September 1, 1979.

3. Acts 1995, 74th Leg., ch. 319, Section 1.

ment imposing a penalty other than death." See Article 11.07, Section 1, V.A.C.C.P.[4] Prior to September 1, 1995, former Article 11.07 set out the procedures for the filing of habeas corpus petitions in death penalty and non-death penalty cases.

## II

Applicant argues Article 11.071 violates the separation of powers provisions of Article 2, Section 1, of the Texas Constitution. He claims Article 11.071 infringes "upon the inherent judicial powers of the Court of Criminal Appeals" to exercise its original habeas corpus jurisdiction by making Article 11.071 the exclusive means by which this Court may exercise that jurisdiction in death penalty cases. (Emphasis in Applicant's brief). This is one of applicant's main contentions under his separation of powers arguments.

The analysis begins with an examination of the constitutional grant of this Court's original habeas corpus jurisdiction to "issue" writs of habeas corpus. Article 5, Section 5, of the Texas Constitution, in relevant part, provides:

"*Subject to such regulations as may be prescribed by law,* the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, . . . ." (Emphasis Supplied).

Article 5, Section 5, of the Texas Constitution, expressly empowers the Legislature to regulate the exercise of this Court's original habeas corpus jurisdiction. And that is what Article 11.071 does when an applicant invokes this Court's original habeas corpus jurisdiction in death penalty cases. See *Ex parte Renier,* 734 S.W.2d 349, 362 (Tex.Cr. App.1987) (Teague, J., dissenting):

"[Former] Arts. 11.06 and 11.07, Secs. 1 and 2, V.A.C.C.P., are procedural rules governing the exercise of original habeas corpus jurisdiction by this Court, the district courts, and the county courts. *They are not a grant of statutory authority distinct from it. (Footnote Omitted). Original jurisdiction is to be distinguished from appellate jurisdiction, not from the statutes intended to regulate the*

*exercise of it.* All of our habeas corpus cases, other than those which have come to us on direct appeal from the refusal of another court to grant relief or by discretionary review, invoke the original jurisdiction of this Court, the exercise of which is regulated in part by the provisions of [former] Chapter 11, V.A.C.C.P." (Emphasis Supplied).

It is clear that since at least 1978 "the Legislature may limit by statute the exercise of this Court's power to determine issues raised by petition for writ of habeas corpus." See *Renier,* 734 S.W.2d at 361 (Teague, J., dissenting) (discussing the 1977 and 1978 amendments to Article 5, Section 5, of the Texas Constitution, expressly empowering the Legislature to do this). And, the Legislature clearly has intended for Article 11.071 to provide the exclusive means by which this Court may exercise its original habeas corpus jurisdiction in death penalty cases. See Article 11.071, Section 1. Any other construction of Article 11.071 would defeat its clear legislative intent of reducing the delays between conviction and execution of sentence in death penalty cases.

The reader might note that this Court's 1967 opinion in *Ex parte Young,* 418 S.W.2d 824, 826 (Tex.Cr.App.1967), suggests former Article 11.07 provided this Court with "statutory" habeas corpus jurisdiction distinct from this Court's original habeas corpus jurisdiction set out in Article 5, Section 5, of the Texas Constitution. But see *Renier,* 734 S.W.2d at 362 fn. 16 (Teague, J., dissenting) (this statement has no precedent in the case law of Texas). Although this arguably was true when *Young* was decided in 1967, since at least 1978 this Court's original habeas corpus jurisdiction has been subject to regulation by the Legislature and former Article 11.07 was a valid regulation of that jurisdiction in death penalty cases. See *Renier,* 734 S.W.2d at 360–62 (Teague, J., dissenting). Moreover, this Court never departed from the procedures set out in former Article 11.07 in exercising its original habeas corpus jurisdiction in death penalty cases.

4. Acts 1995, 74th Leg., ch. 319, Section 5, effec- tive September 1, 1995.

Article 11.071 now contains the *exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction in death penalty cases. See *id.* Since it is clear the Legislature intends for Article 11.071 to provide the exclusive procedures by which this Court may exercise its original habeas corpus jurisdiction in death penalty cases, Article 11.071 has effectively overruled *Young* at least with respect to granting habeas corpus relief to an applicant seeking relief from a judgment imposing a penalty of death. Therefore, to this extent, *Young* is expressly overruled.

This discussion answers most of the contentions advanced under applicant's separation of powers claim. Article 11.071 does not violate separation of powers principles because it is a valid legislative "regulation" of this Court's original habeas corpus jurisdiction as permitted by the "plain" language of Article 5, Section 5, of the Texas Constitution.

Applicant also claims Article 11.071 violates separation of powers principles because it affects the "judiciary's rights" to hear evidence, decide issues of fact raised by the pleadings, decide relevant questions of law, enter a final judgment on the facts and the law, and to execute a final judgment or sentence. See *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239–40 (Tex.Cr.App.1990) (core judicial power embraces the power to do these things). Applicant seems to be arguing Article 11.071 unduly interferes "with the [core] judicial function under the guise of establishing rules of court." See *Armadillo Bail Bonds*, 802 S.W.2d at 240–41 (Legislature may not unduly interfere with the judicial function pursuant to its constitutional power to establish "rules of court" under Article 5, Section 31, Tex. Const.); *Meshell v. State*, 739 S.W.2d 246, 255–58 (Tex.Cr.App.1987) (Legislature may not unduly interfere with the prosecutorial function pursuant to its constitutional power to establish "rules of court" under Article 5, Section 25, Tex. Const.).[5]

Article 11.071 does not interfere with "core judicial functions." Article 11.071, Section 4(a), merely regulates the "means, manner, and mode" of an applicant's assertion of his substantive right to seek habeas corpus relief in this Court. See Article 1, Section 12, Tex. Const. (providing that the writ of habeas corpus is a "writ of right"); *Meshell*, 739 S.W.2d at 255 (pursuant to repealed Article 5, Section 25, Tex. Const.,[6] Legislature has complete authority to pass any law regulating the means, manner and mode of the assertion of a defendant's rights in court). Article 11.071, Section 4(a), does not tell this Court how to decide the substantive claims an applicant raises in a timely filed original habeas corpus application; Article 11.071, Section 4(a), merely regulates *when* those substantive claims must be raised. See *Meshell*, 739 S.W.2d at 255. Therefore, Article 11.071, Section 4(a), does not interfere with "core judicial functions."

Moreover, pursuant to its constitutional power to "regulate" the exercise of this Court's habeas corpus jurisdiction under Article 5, Section 5, of the Texas Constitution, and pursuant to its general plenary power under Article 3, of the Texas Constitution, the Legislature also has not exceeded its authority in providing the "exceptions" contained in Article 11.071, Section 5(a), for successive writ applications and untimely filed original writ applications. See *Meshell*, 739 S.W.2d at 255 fn. 13 (Legislature has power to establish a new right under its general plenary power if that right does not infringe upon another department's separate power). These "exceptions" do not tell this Court how to determine whether any of them apply in a particular case. See *Armadillo Bail Bonds*, 802 S.W.2d at 239–40. Therefore, the "exceptions" in Article 11.071, Section 5(a), do not interfere with "core judicial functions."

### III

Applicant also argues Article 11.071 is unconstitutional because it effectively "suspends" the writ of habeas corpus. Article 1,

---

5. Article 5, Section 25, of the Texas Constitution, was repealed in 1985 by Acts 1985, 69th leg., S.J.R. No. 14, Section 9, which was approved by the voters on November 5, 1985.

6. See also Article 5, Section 31, of the Texas Constitution.

Section 12, of the Texas Constitution provides:

"The writ of habeas corpus is a writ of right, and shall never be suspended. *The Legislature shall enact laws to render the remedy speedy and effectual.*" (Emphasis Supplied).

Although the Legislature may validly "regulate" the exercise of this Court's habeas corpus jurisdiction and enact laws "to render the remedy speedy and effectual," it is clear the Legislature may not enact laws that "suspend" the writ. Article 11.071 does not "suspend" the writ. At common law this Court exercised its original habeas corpus jurisdiction to grant relief in very limited situations—those where illegalities rendered an inferior court's judgment "void." See *Ex parte Tuan Van Truong*, 770 S.W.2d 810, 812 fn. 2 (Tex.Cr.App.1989) (at common law judgment of inferior courts could only be attacked by writ of habeas corpus for such illegalities as render them void); *Ex parte McKay*, 82 Tex.Crim. 221, 199 S.W. 637, 639 (1917) (habeas corpus relief is available against only a void order of a court); *Ex parte Martinez*, 66 Tex.Crim. 1, 145 S.W. 959, 963 (1912) (writ of habeas corpus lies to secure a release where the proceedings are absolutely void); *Ex parte Branch*, 36 Tex.Crim. 384, 37 S.W. 421 (1896) (writ of habeas corpus lies only where the judgment of conviction is absolutely void for want of jurisdiction in the court to act in the particular case); compare *Felker v. Turpin*, 518 U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (under English common law, "which informed American courts' understanding of the scope of the writ," claims reviewable by the writ were limited).

Mostly because of "federal demands" on state courts, the Legislature since about 1967 has "reworked and expanded procedural requisites" which have greatly expanded an applicant's opportunity to obtain habeas corpus relief than what formerly existed at common law. See *Tuan Van Truong*, 770 S.W.2d at 812–13 (constitutional provisions guarantee availability of the writ of habeas corpus *pursuant to legislative enactments* designed to enable an applicant to make a collateral attack and to obtain relief against a final judgment of conviction rendered void not only for reasons under common law but also for want of jurisdiction in the convicting court to enter it where conviction was had in violation of due process).[7] So, it has not been uncommon for the Legislature to "enact laws to render the remedy speedy and effectual." See *id.*

The most recent legislative effort in Article 11.071 does not eliminate in any substantive way an applicant's opportunity to seek habeas corpus relief than what existed under former law. See *Renier*, 734 S.W.2d at 362 (Teague, J., dissenting) (Legislature may not pass laws that make the writ *unavailable* to persons confined or restrained in their liberty or *eliminate altogether* the power of courts to employ it). Article 11.071 merely regulates *when* an applicant must seek this relief. Article 11.071 is a valid exercise of the Legislature's power under Article 1, Section 12, of the Texas Constitution, to "enact laws to render the remedy speedy and effectual." See *Tuan Van Truong*, 770 S.W.2d at 812–13; *Renier*, 734 S.W.2d at 362 (Teague, J., dissenting); compare *Felker*, 518 U.S. at ——, 116 S.Ct. at 2340 (judgments about the proper scope of the writ are normally for Congress to make). Article 11.071 continues to provide an applicant a greater opportunity to obtain habeas corpus relief in death penalty cases than what existed at common law.

## IV

Applicant also contends Article 11.071 violates the "retroactive laws" provision of Article 1, Section 16, of the Texas Constitution. Article 1, Section 16, of the Texas Constitution, provides:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

---

**7.** When this Court decided *Tuan Van Truong*, some believed a conviction "had in violation of due process" rendered the conviction "void" by somehow depriving a trial court of its jurisdiction to convict. See *Tuan Van Truong*, 770 S.W.2d at 813–15 (Teague, J., dissenting) (this Court, following the federal lead, has made the writ available to correct errors arising from violation of federal (and perhaps state) constitutional law upon the rather vague theory that a trial court lacks jurisdiction to convict without due process of law).

Under Article 11.071, Section 5(a), this Court may not consider the merits of a successive habeas corpus application that was not "pending on September 1, 1995" unless the applicant establishes one of the exceptions contained in Article 11.071, Section 5(a). One of these exceptions is that "the current claims and issues have not been and could not have been presented previously in a timely original application." See Article 11.071, Section 5(a)(1).[8]

Applicant argues the successive writ provisions of Article 11.071, Section 5(a), violate the "retroactive laws" provision of Article 1, Section 16, by disturbing "vested and substantial" rights. The State argues this constitutional provision applies only to retroactive civil legislation. See *Grimes v. State,* 807 S.W.2d 582, 587 (Tex.Cr.App.1991). What the issue essentially boils down to is whether the Legislature may now bar an applicant from raising in a successive writ application a claim he had an opportunity but failed to raise in a prior writ application. See Article 11.071, Section 5(a)(1).

As this Court did in *Grimes,* I will assume that Article 1, Section 16's, prohibition against retroactive laws is applicable to criminal cases. See *Grimes,* 807 S.W.2d at 587. As this Court observed in *Grimes,* the retroactive laws provision in Article 1, Section 16, "has never been made applicable to statutes merely affecting matters of procedure which do not disturb vested, substantive rights." See *Grimes,* 807 S.W.2d at 587 & at 590 (Baird, J., dissenting) (civil definition of "retroactive law"). As I have observed earlier, Article 11.071 is a statute "merely affecting matters of procedure." Moreover, an applicant seeking habeas corpus relief from a death penalty has no vested right to "abuse" the writ by filing successive writ applications containing claims he had an opportunity to raise earlier. See, e.g., *Ex parte Carr,* 511 S.W.2d 523, 525 (Tex.Cr.App.1974) (if peti-

tioner has grounds which would justify granting habeas corpus relief, he should present them with dispatch for determination, rather than doling them out one-by-one in repeated attempts to have both the benefits of relief and the fleeting pleasures of harassing those who confine him).

Moreover, under former Article 11.07, this Court validly could have adopted and applied these procedural rules of "waiver" and "forfeiture" to successive writ applications containing claims an applicant had an opportunity to raise earlier under either this Court's statutory power to adopt procedural rules or as a matter of common law.[9] See *Carr,* 511 S.W.2d at 525; V.T.C.A., Texas Government Code, Section 22.108(a). This is because this Court validly could have determined the State's (and society's) valid and legitimate interest in the finality of an applicant's conviction and death sentence outweigh the applicant's interest in raising in a successive writ application a claim he had an opportunity to raise earlier. See *Ex parte Goodman,* 816 S.W.2d 383, 387 (Tex.Cr.App.1991) (Clinton, J., concurring); *Black v. State,* 816 S.W.2d 350, 375–79 (Tex.Cr.App.1991) (Clinton, J., dissenting); *Ex parte Dutchover,* 779 S.W.2d 76, 78–79 (Tex.Cr.App.1989) (Clinton, J., concurring). The successive writ provisions of Article 11.071, Section 5(a), for the most part are merely a legislative codification of the judicially created "abuse of the writ doctrine." See *Carr,* 511 S.W.2d at 525; compare *Felker,* 518 U.S. at ――, 116 S.Ct. at 2335 (doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions).

Moreover, that this Court may not have consistently applied these rules of "waiver" and "forfeiture" under prior law did not create a vested and substantive right for an

---

8. In light of this exception, this Court is not required to address the constitutionality of a law that would prohibit this Court from addressing the merits of a successive habeas corpus application containing a claim an applicant had no opportunity to raise in an "original" application.

9. I also note the Legislature has withdrawn this Court's rulemaking authority "with respect to

rules of appellate procedure relating to an application for a writ of habeas corpus, but only to the extent the rules conflict with a procedure under Article 11.071, Code of Criminal Procedure, as added by this Act, or Article 11.07, Code of Criminal Procedure, as amended by this Act." See Acts 1995, 74th Leg., ch. 319, Section 6.

applicant to file successive writ applications containing claims he could have raised earlier. See *Ex parte Abell,* 613 S.W.2d 255, 261–61 (Tex.1981) (that which constitutes a mere expectancy based upon anticipated continuance of existing law is not a vested right); see also *Ex parte McKay,* 819 S.W.2d 478, 486 (Tex.Cr.App.1990) (Clinton, J., concurring) (another example of this Court's *ad hoc* approach to the question of what issues will be entertained in collateral attack of a conviction suffering "no jurisdictional defect as to render it void"). The successive writ provisions of Article 11.071, Section 5(a), do not work a "grievous wrong," and they do not violate the "retroactive laws" provision of Article 1, Section 16, of the Texas Constitution. Compare *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993) (historic meaning of habeas corpus is to afford relief to those whom society has "grievously wronged").

### V

Applicant also contends his equal protection rights under Article 1, Section 3, of the Texas Constitution, and under the Fourteenth Amendment to the United States Constitution are violated by disparate application of the successive writ provisions to capital and noncapital habeas corpus petitions. Compare Article 11.07, Section 4(a), V.A.C.C.P., *with* Article 11.071, Section 5(a). Applicant's brief states:

"However, as we have previously seen, non-capital habeas corpus felony litigants in the State of Texas are *not* being 'retroactively' penalized for having *previously* filed post-conviction habeas corpus actions, whereas capital murder litigants are. (Citations Omitted)." (Emphasis in Applicant's Brief).

Relying on Section 7(c) of the Amendatory Act,[10] which makes the change in law made by the amendments to Article 11.07 applicable "to an application for writ of habeas corpus filed on or after" September 1, 1995, applicant further argues:

"In other words, while the statute does contain certain limitations even on non-capital habeas corpus applicants, those

non-capital litigants are given *notice,* as of the effective date of the Act (9/1/95), that thereafter they will be limited to one application for writ of habeas corpus, whereas capital murder litigants' *previous habeas efforts* are *included* within this 'counting mechanism', to render any applications filed *after* September 1, 1995, to be limited in their scope for merit, which directly implicates the Petitioner's case herein." (Emphasis in Applicant's Brief).

The State claims the successive writ provisions of Article 11.07, Section 4(a), do not "operate differently" from the successive writ provisions of Article 11.071, Section 5(a). The State argues:

"In any event, there is no difference between the application of the successive writ provisions of Articles 11.07 and 11.071. After September 1, 1995, any successive writ, whether it challenges a capital or other felony conviction, is subject to virtually identical limitations. (Footnote Omitted). Section 7 of Senate Bill 440 states that the amendatory provisions relevant to Article 11.07 apply to an application filed after the effective date. Section 4 of Article 11.07 makes it clear that the successive writ provisions are applicable if the defendant has previously filed an action under 11.07. There is no provision for an applicant to file a second initial application before being subject to the successive writ provisions. This is precisely the manner in which the successive writ provisions apply to capital cases under Article 11.071."

I agree with the State that the successive writ provisions of Articles 11.07 and 11.071 are "subject to virtually identical limitations." Once a nondeath penalty applicant and a death penalty applicant become subject to the applicable successive writ provisions, they are treated "virtually identical." Compare Article 11.07, Section 4(a), (successive writ provisions become applicable when "a subsequent writ of habeas corpus is filed after final disposition of an initial application") *with* Article 11.071, Section 5(a), (successive writ provisions become applicable when "an original application for a writ of

10. Acts 1995, 74th Leg., ch. 319, Section 7(c).

habeas corpus is untimely or if a subsequent application is filed after filing an original application").

However, what applicant really seems to be complaining about is that nondeath penalty and death penalty applicants who have successive writ applications pending on September 1, 1995, are not subject to the applicable statutory successive writ provisions. Compare Acts 1995, 74th Leg., ch. 319, Section 7(c), (change in law made by the 1995 amendments to Article 11.07 applies only to a writ application filed on or after September 1, 1995, and a writ application filed before September 1, 1995, is covered by the law in effect when the application was filed, and the former law is continued in effect for that purpose) *with* Article 11.071, Section 4(a) (expressly applying to an applicant who does "not have an original application for a writ of habeas corpus under [former] Article 11.07 pending on September 1, 1995, and has not previously filed an application under [former] Article 11.07"). But, a death penalty applicant, like the one here, who files a successive writ application after September 1, 1995, is subject to the successive writ provisions of Article 11.071, Section 5(a).

I understand applicant to be claiming that *his* equal protection rights are violated because nondeath penalty and death penalty applicants with successive writ applications pending on September 1, 1995, are treated differently from death penalty applicants who file successive writ applications after September 1, 1995. This Court has held that "differing procedures" to capital and noncapital litigants do not violate equal protection principles. See *Smith v. State*, 898 S.W.2d 838, 847–48 (Tex.Cr.App.1995). Applicant also is treated the same as other death penalty and nondeath penalty litigants who file successive writ applications after September 1, 1995.

That applicant is treated differently from nondeath penalty and death penalty applicants with successive writ applications pending on September 1, 1995, does not implicate equal protection principles. Those applicants are governed by a separate statutory scheme than the one which governs applicant's case. Applicant receives equal protection of the laws under the statutory scheme that applies to him. Applicant has failed to establish Article 11.071 has been unconstitutionally applied to him as he can make no threshold showing of disparate treatment between himself and other similarly situated death penalty and nondeath penalty applicants. See *Dinkins v. State*, 894 S.W.2d 330, 363 (Tex. Cr.App.1995) (Clinton, J., dissenting) (when all similarly situated capital murder defendants are treated the same, there simply is no colorable equal protection claim).[11]

11. I note the majority opinion in *Dinkins* held the defendant's "right to Equal Protection under the Fourteenth Amendment was not violated by prosecuting him under pre-amended art. 37.071. (Footnote Omitted)." *Dinkins*, 894 S.W.2d at 341–42. The majority reached this holding by concluding the jury was able to give effect to the defendant's mitigating evidence at trial. See *Dinkins*, 894 S.W.2d at 342 (record did not suggest jury was unable to consider and give effect to the defendant's mitigating evidence "under the statutory punishment issues which applied at the time of his trial"). However, had the jury in *Dinkins* not been able to give effect to the defendant's mitigating evidence at trial, that would have constituted an Eighth Amendment violation and not a violation of the Equal Protection Clause of the Fourteenth Amendment. See *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Moreover, even under the analytical approach the majority in *Dinkins* followed, applicant is not entitled to relief on his equal protection claim. It is clear we are not dealing with a legislative classification which implicates a "fundamental right" or singles out members of a "suspect class" for invidious discriminatory purposes. See *Dinkins*, 894 S.W.2d at 341–42. Criminals are not a "suspect class" and they have no "fundamental right" to file successive writ applications. See *id*.

Moreover, the Legislature rationally could have concluded death penalty applicants have been more likely than nondeath penalty applicants to have "abused" the writ. Therefore, it was not unreasonable for the Legislature to make death penalty applicants who file successive writ applications after September 1, 1995, subject to the successive writ provisions of Article 11.071, Section 5(a). That death penalty applicants with successive writ applications pending on September 1, 1995, are not subject to the successive writ provisions of Article 11.071, Section 5(a), does not violate equal protection principles as there is no indication of invidious discrimination against members of a "suspect class." That this class of death penalty applicants may have received a legislative "break" does not establish invidious discrimination against death penalty applicants, like the one here, who file successive writ applications after September 1, 1995. All similarly

## VI

Applicant also contends various provisions of Article 11.071 violate the due process clause of the Fourteenth Amendment to the United States Constitution and the due course of law provisions of Article 1, Section 19, of the Texas Constitution. I, like the State, am not really able to discern applicant's arguments under this point. I simply point out that an applicant has no "substantive due process" right to file successive writ applications, and that applicants, like the one here, have been on notice that successive writ applications could be dismissed for abuse of the writ. See *Carr*, 511 S.W.2d at 525. This sufficiently disposes of applicant's due process and due course of law claims.

## VII

Applicant contends the provisions of Article 11.071 violate Article 1, Section 10, of the Texas Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution because "said law retroactively renders [applicant] without the 'full and effective assistance of counsel' during the first habeas corpus case." Article 11.071, Section 2, V.A.C.C.P., provides for the appointment of "competent" counsel for an indigent applicant to file an original habeas corpus application in death penalty cases. Former Article 11.07 did not automatically provide for the appointment of counsel in such circumstances. Applicant argues:

> "Since the statutes *now* provide for the *absolute* appointment for all capital murder defendants/habeas litigants, the Legislature has made the habeas corpus remedy a *'critical stage'* of the proceedings, which it clearly is, when a death penalty is involved. As such, the right to counsel now clearly attaches to such proceedings. Thus, counsel for these proceedings must be competent and 'effective', otherwise, the proceeding is constitutionally 'tainted'." (Citations Omitted). (Emphasis in Applicant's Brief)

situated death penalty applicants are treated equally.

**12.** Applicant's brief indicates he was represented by "pro bono" counsel when he filed his original habeas corpus application. This raises the ques-

Applicant seems to be arguing that since the Legislature now provides for the appointment of counsel for indigent applicants to file an original habeas corpus application in death penalty cases, the failure to appoint counsel for him when he filed his original habeas corpus application violated his constitutional right to counsel.[12] Indigent criminals have no constitutional right to the appointment of counsel to pursue state postconviction relief. See *Murray v. Giarratano*, 492 U.S. 1, 7–8, 109 S.Ct. 2765, 2769, 106 L.Ed.2d 1 (1989). The "matter is one of legislative choice based on difficult policy considerations and the allocation of scarce legal resources." *Murray*, 492 U.S. at 13, 109 S.Ct. at 2772 (O'Connor, J., concurring). We have rightly deferred to our Legislature on the matter presented here. See *id.* Since applicant was not constitutionally entitled to appointed counsel when he filed his original habeas corpus application, then the failure to appoint counsel to do so cannot form the basis of any claim asserting a violation of the constitutional right to counsel.

## VIII

Applicant contends Article 11.071 violates the "open courts" provision of Article 1, Section 13, of the Texas Constitution, by denying a "full and fair 'remedy' for applicant's new habeas claims." The State claims the "open courts" provision is not applicable to criminal cases.

I will assume that Article 1, Section 13's, "open courts" provision is applicable to criminal cases. See *Grimes*, 807 S.W.2d at 587. In order to prevail on his "open courts" claim, applicant must show, among other things, that his "right to bring a well-established common law cause of action" has been "effectively abrogated by the legislature." See *Sax v. Votteler*, 648 S.W.2d 661, 665 (Tex.1983). Applicant has not shown that filing successive writ applications is a well-established common law right. Moreover, the successive writ provisions of Article

tion of applicant's standing to complain that Article 11.071 "retroactively renders [applicant] without the full and effective assistance of counsel during the first habeas corpus case."

11.071, Section 5(a), provides an "exception" for "new habeas claims." See Article 11.071, Section 5(a)(1). Therefore, applicant's "open courts" claim is without merit. Cf. *Murray*, 492 U.S. at 14, 109 S.Ct. at 2772 (Kennedy, J., concurring in the judgment) (as a matter of federal constitutional law, the requirement of meaningful access can be satisfied in various ways, and the intricacies and range of options are of sufficient complexity that state legislatures must be given wide discretion to select appropriate solutions).

## IX

I now address what I perceive to be the main contention raised by the amici and applicant that I have not previously addressed in this concurring opinion. The contention is that Article 11.071's procedural requirement that an applicant's original habeas corpus application run almost parallel with the applicant's direct appeal creates an unacceptable risk that an innocent person might be executed. See Article 11.071, Section 4(a). The claim is that this procedure and its possible effect amount to a "suspension" of the writ in violation of Article 1, Section 12, of the Texas Constitution.[13]

This claim must be considered in the light of all that has gone on before a death penalty applicant files an original application for habeas corpus relief. The federal constitution "does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." See *Herrera v. Collins*, 506 U.S. 390, 399, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). A conviction from a state criminal trial that complies with constitutionally required procedural safeguards is the most reliable indicator of a defendant's guilt or innocence. See *Herrera*, 506 U.S. at 403–04 and 416–17, 113 S.Ct. at 862 and 869 (in state criminal proceedings the trial is the paramount event for determining a defendant's guilt or innocence). And, it should be noted that applicant "is not innocent, in any sense of the word." See *Herrera*, 506 U.S. at 419, 113 S.Ct. at 870 (O'Connor, J., concurring);

*Davis*, 782 S.W.2d at 219–20 (in March 1984 applicant murdered three children, one of whom he sexually assaulted, during a burglary).

In this country, criminal defendants are entitled to a multitude of strict procedural protections before the State may convict and insist upon execution of sentence. These rights include a presumption of innocence and the requirement that the State prove its case beyond a reasonable doubt. See *Herrera*, 506 U.S. at 398–99, 113 S.Ct. at 859–60. Other federal constitutional protections mostly of a procedural nature include the right to adequate notice of the charges to prepare a defense, the right to confront adverse witnesses, the right to compulsory process, the right to the disclosure of exculpatory evidence in the prosecution's possession, and the right to a fair and public trial before a neutral tribunal. See *id.* The Eighth Amendment also "requires increased reliability of the process by which capital punishment may be imposed." *Herrera*, 506 U.S. at 405, 113 S.Ct. at 863.

In addition, the Sixth Amendment requires a State to provide counsel to an indigent capital defendant through trial and the first rounds of appeal as of right. See *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This Sixth Amendment right to counsel also includes the right to "effective" assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An indigent criminal defendant also is entitled to the appointment of experts in some situations. See *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). These important procedural rights are "unparalleled" in their contribution to the reliability and "fairness" of the fact-finding process especially in capital cases. See *Herrera*, 506 U.S. at 420, 113 S.Ct. at 871 (O'Connor, J., concurring) (constitution offers unparalleled protections against convicting the innocent).

---

**13.** Applicant's original habeas corpus application under former Article 11.07 did not run almost parallel with his direct appeal, and he does not proclaim his innocence in this proceeding. This raises the question of his standing to assert this claim.

By the time a death penalty applicant exercises another important right afforded him by filing an *original* habeas corpus application, the presumption of innocence is gone and a presumption of the regularity and validity of the prior proceedings applies. See *Murray*, 492 U.S at 7, 109 S.Ct. at 2769 (contrasting the trial stage of a criminal proceeding with the appellate stage of a criminal proceeding). This applicant bears a heavy burden to establish his right to habeas corpus relief, and any "standard for deciding what claims to entertain in a collateral proceeding should be rigorous." See *Goodman*, 816 S.W.2d at 387 (Clinton, J., concurring); cf. *Herrera*, 506 U.S. at 399–401, 416–18, 113 S.Ct. at 860–61, 869.

Against this backdrop, it is not difficult for this Court to reject the contention that the filing requirements of Article 11.071, Section 4(a), create an unacceptable risk that an innocent person might be executed. The procedural protections attendant to trial greatly eliminate this risk. See *Herrera*, 506 U.S. at 421–22, 113 S.Ct. at 871 (O'Connor, J., concurring). Article 11.071 also affords more protection than what the federal constitution requires by providing for the appointment of counsel for an indigent applicant to file an original habeas corpus application. See Article 11.071, Section 2. And, Article 11.071 also provides "exceptions" to the successive writ provisions of Article 11.071, Section 5(a). See Article 11.071, Section 5(a)(1), (2), (3).[14]

Moreover, as I observed earlier, Article 11.071 does not eliminate in any substantive way an applicant's opportunity to seek habeas corpus relief than what existed under former law. See *Tuan Van Truong*, 770 S.W.2d at 812 fn. 2. Article 11.071 does not make the writ unavailable to death penalty applicants or eliminate altogether the power of this Court to employ it. See *Renier*, 734 S.W.2d at 362 (Teague, J., dissenting). Therefore, we must defer to our Legislature on the contentions advanced here.

## X

Having resolved applicant's constitutional challenges to Article 11.071 adversely to him, it now becomes necessary to dispose of his application for habeas corpus relief. This is applicant's second application for habeas corpus relief. It was filed in December 1995; therefore, the successive writ provisions of Article 11.071, Section 5, apply. In the instant cause, applicant presents two claims upon which he challenges the validity of his conviction and death sentence. These claims are based upon the United States Supreme Court's 1981 decisions in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The application for habeas corpus relief fails to establish any of the "exceptions" contained in Article 11.071, Section 5(a). Therefore, I agree with the majority that our stay of execution ordered January 2, 1996, should be vacated, and the instant application should be dismissed as an abuse of the writ. See Article 11.071, Section 5(c), V.A.C.C.P.

With these comments, I join Judge Overstreet's opinion.

WHITE, MEYERS and KELLER, JJ., join this concurring opinion.

BAIRD, Judge, concurring.

I agree that Tex.Code Crim.Proc. art. 11.071 passes constitutional muster. I write

---

14. The "exception" in Article 11.071, Section 5(a)(1), apparently would permit this Court to consider the claim advanced in *Herrera*—i.e., a claim of actual innocence based on newly discovered evidence. See *Herrera*, 506 U.S. at 400, 113 S.Ct. at 860. In *Herrera*, the United States Supreme Court left open the question of whether federal courts in federal habeas proceedings may entertain claims of actual innocence based on newly discovered evidence. See *Herrera*, 506 U.S. at 427, 113 S.Ct. at 874 (O'Connor, J., concurring) (the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence). In this respect, Article 11.071 may provide more protection than what the federal constitution provides. See *Herrera*, 506 U.S. at 427–28, 113 S.Ct. at 874 (Scalia, J., concurring) (there is no basis in text, tradition, or even in contemporary practice for finding in the constitution a right to demand judicial consideration of newly discovered evidence of innocence brought forward after conviction). Of course, there is no claim before this Court asserting applicant's innocence based on newly discovered evidence. See *Davis*, 782 S.W.2d at 219–20.

separately to supplement the majority opinion in an effort to avoid any confusion in the future.

## I.

The majority states: "[a]rticle 11.071 simply provides the methodology for rendering the writ of habeas corpus *and does not prevent this Court from exercising its constitutional powers over the writ of habeas corpus.*" *Ante,* 947 S.W.2d at 219.[1] The potential for confusion arises when one considers this statement in light of Judge McCormick's statement that art. 11.071 provides the *"exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction under [Tex. Const. art V, § 5]". *Ante,* 947 S.W.2d at 222 (McCormick, J., concurring)(emphasis in original). For the following reasons, the majority correctly holds art. 11.071 does *not* impact our original habeas jurisdiction. This is true because art. 11.071 is a statutory creation while our original habeas corpus jurisdiction is derived from the Constitution. Therefore, this Court has original habeas corpus jurisdiction *separate and apart* from that provided in art. 11.071.

## II.

Prior to 1977, the Texas Constitution provided in part:

> The Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction....

Tex. Const. art. V, § 5. Under this provision, this Court had "general original jurisdiction to issue writs of habeas corpus." *Ex parte Jackson,* 602 S.W.2d 535 (Tex.Cr.App. 1980); *and, Ex parte Cvengros,* 384 S.W.2d 881, 882 (Tex.Cr.App.1964). *See also, Ex parte Hofmayer,* 420 S.W.2d 137, 138 (Tex. 1967) (Although the Court of Criminal Appeals has general original jurisdiction to grant the writ of habeas corpus, the Texas Supreme Court does not.). And, this jurisdiction was unlimited. *Ex parte Supercin-*

ski, 561 S.W.2d 482, 483 (Tex.Cr.App.1977); *Ex parte Herrin,* 537 S.W.2d 33, 34 (Tex.Cr. App.1976); *Ex parte Waters,* 499 S.W.2d 309, n. 1 (Tex.Cr.App.1973); *State ex rel. Wilson v. Briggs,* 171 Tex.Crim. 479, 351 S.W.2d 892, 894 (1961).

In 1977, the Texas Constitution was amended to provide:

> Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments....

Texas Const. art. V, § 5.

The intent behind the 1977 amendment was to expand, *not limit,* our jurisdiction. At the time the Legislature was considering this amendment, then Presiding Judge Onion and other Judges of this Court appeared before the Senate and House Committees to explain the effect of the proposed amendment. *Thomas v. Stevenson,* 561 S.W.2d 845, 847 (Tex.Cr.App.1978) (Onion, P.J., concurring). The legislative history demonstrates the purpose of the amendment was to provide this Court with *greater* power to grant extraordinary writs in criminal matters. *Id.,* 561 S.W.2d at 847. As Presiding Judge Onion explained: "... [the amendment] was drafted to give this court original jurisdiction not only to issue writs of habeas corpus but writs of mandamus, procedendo, prohibition and certiorari." *Id.,* 561 S.W.2d at 848. Therefore, the 1977 constitutional amendment did *not* limit our habeas jurisdiction. *See also, State ex rel. Holmes v. Honorable Court of Appeals for the Third Dist.,* 885 S.W.2d 389, 399 (Tex.Cr.App.1994) (Court refused to assume "original habeas corpus jurisdiction" when real party in interest was "free to pursue his claims through the filing of an application under Tex.Code Crim.Proc. Ann. art. 11.07."); *Ex parte Hargett,* 819 S.W.2d 866, 867 (Tex.Cr.App.1991) (Under the definitions set forth in Chapter 11 of the

---

1. All emphasis is supplied unless otherwise indicated.

Texas Code of Criminal Procedure, a writ of habeas corpus filed pursuant to Tex. Const. art. V, § 8 has much broader availability to applicants than a writ filed pursuant to art. 11.07); *and, Ex parte Krupps,* 712 S.W.2d 144, 151 (Tex.Cr.App.1986) (Onion, P.J., concurring) ("The Court has general and unlimited jurisdiction to issue original writs of habeas corpus in all cases, including those of a civil nature."). From this authority it is clear our original jurisdiction is *unlimited,* notwithstanding arts. 11.07 and 11.071.

This was made clear in *Ex parte Renier,* 734 S.W.2d 349 (Tex.Cr.App.1987), where the applicant, contending the indictment upon which his conviction was based was void, sought relief under art. 11.07. *Id.,* 734 S.W.2d at 350. Even though Renier had successfully completed his probation and was not confined, he contended the void indictment was nevertheless subject to habeas corpus review. *Id.,* 734 S.W.2d at 351 (citing *Ex parte Ormsby,* 676 S.W.2d 130 (Tex.Cr.App. 1984)). We held Renier's application was not authorized under art. 11.07 because Renier was not "confined." *Renier,* 734 S.W.2d at 351–53. *See,* art. 11.07 §§ 2(c) and (d). But we specifically noted that one who otherwise suffers collateral restraint was not barred from seeking relief by way of original habeas corpus. *Renier,* 734 S.W.2d at 353. Had we held otherwise, we would have unconstitutionally "suspended" the writ of habeas corpus. *Id.,* 734 S.W.2d at 353–54 (citing Tex. Const. art. I, § 12). We dismissed Renier's application without prejudice to his right to file another application invoking the Court's original jurisdiction. *Ibid. See also, Ex parte Brager,* 704 S.W.2d 46, n. 1 (Tex.Cr. App.1986) (Distinguishes between an original application for writ of habeas corpus and an application filed under art. 11.07.). Both *Renier* and *Brager* were decided *after* the 1977 amendment to art. V, § 5.

### III.

Citing no controlling authority, Judge McCormick argues art. 11.071 provides the *"exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction." *Ante,* 947 S.W.2d at 222 (emphasis in original). These arguments have been raised and rejected in the past. For instance, Judge Teague's similar argument fell on deaf ears in his dissenting opinion to *Renier; an opinion which Judge McCormick refused to join.* Further, Judge McCormick *joined* the majority in *Brager.*[2]

Finally, the holding proposed by Judge McCormick could have a preclusive effect on our jurisdiction to review contempt orders. There is no right of appeal from an order of contempt. *Ex parte Eureste,* 725 S.W.2d 214, 216 (Tex.Cr.App.1986); *Ex parte Jacobs,* 664 S.W.2d 360 (Tex.Cr.App.1984); *and, Ex parte Moorehouse,* 614 S.W.2d 450 (Tex.Cr. App.1981). The proper course of review from a contempt order is by original application for writ of habeas corpus. *Eureste,* 725 S.W.2d at 216. Indeed, writing for the Court in *Collins v. Kegans,* 802 S.W.2d 702, 704–705 (Tex.Cr.App.1991), Judge McCormick held: "the validity of a contempt judgment can be attacked *only* by way of habeas corpus." *Ibid. See also, Ex parte Gray,* 649 S.W.2d 640, 642 (Tex.Cr.App.1983). But, because contempt orders are not "final convictions," they are not subject to review under either art. 11.07 or 11.071. *See,* Tex.Code Crim.Proc. Ann. art. 11.07, § 3(a). Therefore, our jurisdiction to review contempt orders is entirely based upon art. V, § 5. *Eureste,* 725 S.W.2d at 216. If we adopted Judge McCormick's position that art. 11.07 and 11.071 provide the *exclusive* means to invoke our habeas corpus jurisdiction, there would be no vehicle to challenge the validity of a contempt order.

In sum, Judge McCormick's argument today is contradicted not only by controlling

**2.** Further, in *Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.,* 769 S.W.2d 554 (Tex.Cr.App.1989), the Court of Appeals sought to limit *Renier.* We rejected this construction, however, and again held that art. 11.07 does not limit our original habeas corpus jurisdiction. *Rodriguez,* 769 S.W.2d at 558. In *Rodriguez,* Judge McCormick wrote: "I believe we are all in agreement that Article 11.07, V.A.C.C.P., is totally inapplicable to this situation. Likewise, I believe *we all recognize that, to a limited extent, the district courts of this State have certain constitutional authority to issue the writ of habeas corpus." Rodriguez,* 769 S.W.2d at 562 (McCormick, J., dissenting).

precedent, but by his earlier positions. With respect, Judge McCormick has yet to advance a principled reason for deviating from the positions he took in *Renier, Brager and, Collins. See, State v. Daugherty*, 931 S.W.2d 268, 274 (Tex.Cr.App.1996) (McCormick, J., dissenting).

Because the majority opinion reaffirms our precedent holding art. 11.07 does not affect our original habeas jurisdiction, I join that opinion.

OVERSTREET, J., joins this opinion.

MANSFIELD, Judge, concurring.

Applicant, James Carl Lee Davis, was convicted in 1985 of the capital murder of Yvette Johnson, said murder having been committed while in the course of committing and attempting to commit the offense of burglary of the habitation of Pauline Johnson, the victim's mother. The murder occurred in 1984.[1] This Court affirmed applicant's conviction and death sentence in 1989. *Davis v. State*, 782 S.W.2d 211 (Tex.Crim.App.1989). Applicant's petition for writ of certiorari was denied by the U.S. Supreme Court in 1990. 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990).

Applicant filed his first application for habeas corpus relief with this Court in 1990, under TEX.CODE CRIM.PROC.ANN. Art. 11.07, as then in effect. We denied the relief requested in 1992. Subsequently, applicant filed an application for federal habeas corpus relief in the United States District Court for the Western District of Texas. In 1993, the federal district court granted applicant relief

to the extent of relieving him from his sentence of death. In 1995, the Fifth Circuit Court of Appeals reversed and reinstated applicant's death sentence. *Davis v. Scott*, 51 F.3d 457 (5th Cir.), *cert. denied* —— U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

Applicant filed his second application for state habeas corpus relief in this Court in December of 1995. In January 1996, this Court filed and set this cause for submission to address applicant's challenge to the provisions of Art. 11.071, which became effective September 1, 1995. Applicant specifically challenged Art. 11.071, Sec. 5, contending it unconstitutionally restricted his right to file subsequent applications for writ of habeas corpus unless he was able to meet one of several criteria specified in Sec. 5.[2]

The majority opinion correctly, in my opinion, holds Art. 11.071 merely "provides for the methodology for rendering the writ of habeas corpus and does not prevent this Court from exercising its constitutional powers over the writ of habeas corpus." (Majority op. at 219). It is clear that Art. 11.071 does not suspend the right to writ of habeas corpus found in Tex. Const. Art. I, Sec. 12; Article 11.071 only provides a framework by which bona fide applications are accorded the attention they deserve and "frivolous" applications are summarily disposed of. I note further that applicant's contention that there is a constitutionally-protected right to file an unlimited number of *post-conviction* writs of habeas corpus lacks merit.[3] The provisions of Art. 11.071, Sec. 5 ensure that valid claims may be raised by subsequent habeas applications. It is within the power of the Legisla-

1. Yvette Johnson, along with her brothers, Tony and Tyran, were beaten to death with a pipe. A fourth child, though also beaten with the pipe, was able to escape to a neighbor's residence from where she called the police. Appellant has not been charged with the murder of Tony and Tyran. The victim's mother, Pauline Johnson, was not home at the time of the murders.

2. Subsequent applications for writs of habeas corpus are barred by Section 5 as untimely unless (i) the applicant can establish the claims and issues presented in the subsequent writ could not have been raised in his original or previously-considered subsequent writ because the factual or legal bases for the claims in the subsequent writ were previously unavailable; or (ii) he es-

tablishes, by a preponderance of the evidence, but for a violation of the U.S. Constitution, no rational jury could have found the applicant guilty beyond a reasonable doubt; or (iii) he establishes, by clear and convincing evidence, but for a violation of the U.S. Constitution, no rational juror would have answered in the State's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Art. 37.071 or 37.0711.

3. This assumes, of course, there *is* a constitutional right to post-conviction habeas relief, which, under the common law, is questionable. See *Ex parte Tuan Van Truong*, 770 S.W.2d 810, 812 (Tex.Crim.App.1989); *Felker v. Turpin*, 518 U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

ture to provide *how* and *when* applications for *statutory* Art. 11.071 writs of habeas corpus must be filed; Art. 11.071 does no more than this.

The people of Texas, speaking through their elected representatives, have expressed their concern that many death row inmates—understandably—have successfully delayed their executions by filing successive and frivolous applications for habeas corpus relief. While it is not possible to tell if requiring inmates to raise all their claims in their initial writ applications will speed up the pace of executions in Texas, it is not a violation of due process or due course of law to require them to do so. Applicant was convicted for this brutal murder over 11 years ago; other inmates have been on death row for even longer periods of time. Justice delayed is justice denied; to allow legally-imposed death sentences to be delayed in their implementation for up to 20 years, due in part to meritless serial applications for habeas relief filed primarily to effectuate such delays, is an insult to our legal system and to the people of Texas.[4]

I am distressed that it has taken this Court nearly a year to hand down its opinion in this cause. While the issues presented are complex and much was at stake no matter which way we ruled, I believe we have an obligation to act on matters before us expeditiously. Many Texans, including members of the media, have criticized us for not resolving this case months ago; I find myself in sympathy with this criticism.

With these comments I join Presiding Judge McCormick's concurring opinion, thereby joining the opinion of the Court.

CLINTON, Judge, dissenting.

I write to address the Court's resolution of applicant's argument that Article 11.071, V.A.C.C.P. "suspends" the Great Writ, contrary to Article I, Section 12 of the Texas Constitution. The majority concludes that

"Article 11.071, pursuant to the constitutional mandate to the Legislature to enact laws to render the remedy speedy and effectual, simply provides for the methodology for rendering and effecting the implementation of the right to writ of habeas corpus and does not prevent this Court from exercising its constitutional powers over the writ of habeas corpus." Majority op. at 219. Similarly, in his concurring opinion Judge McCormick opines that "Article 11.071 is a valid exercise of the Legislature's power under Article 1, Section 12, of the Texas Constitution, to 'enact laws to render the remedy speedy and effectual.' " Concurring op. at 225. As if it were some consolation, Judge McCormick then assures us that the new capital habeas statute "continues to provide an applicant greater opportunity to obtain habeas corpus relief in death penalty cases than what existed at common law." *Id.*, at 225. But the only thing Article 11.071 is designed to "render ... speedy and effectual" is the denial of the remedy, not the remedy itself. Moreover, that the statute does not reduce the number of issues currently recognized as cognizable in a post-conviction application for writ of habeas corpus back to that which was available under the common law does not mean it does not otherwise "suspend" the writ. To the extent that Article 11.071 renders unavailable a cognizable claim never before asserted in a previous post-conviction writ, it regulates that claim into oblivion. I dissent.

*I.*

Under the common law, a post-conviction application for writ of habeas corpus was available only to remedy such defects as rendered the conviction "void." See *Ex parte Banks*, 769 S.W.2d 539, 541–45 (Tex.Cr.App. 1989) (Clinton, J., dissenting), and cases cited therein; *Ex parte Tuan Van Truong*, 770 S.W.2d 810, 811 (Tex.Cr.App.1989). But:

"[a]s the United States Supreme Court began to recognize, for purposes of implementing federal habeas corpus provisions,

---

4. This is in no way meant to criticize attorneys representing death-row inmates, who, for the most part, file applications on behalf of their clients in good faith and in the sincere belief that their claims are valid. Also, Article 11.07, as it existed prior to the enactment of Article 11.071,

implicitly encouraged the raising of issues piecemeal via the filing of successive applications for habeas relief. I particularly commend counsel for applicant in the present case for his outstanding advocacy on behalf of his client.

that '[a] court's jurisdiction at the beginning of trial may be lost' on account of some federal constitutional defect committed in the proceedings, *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 1468 (1938), so, too, this Court began to consider violations of certain federal constitutional rights to impact the integrity, if not jurisdiction, of the trial court to such an extent as to render a conviction 'void' for purposes of our own post-conviction collateral review. See cases discussed in *Ex parte Banks*, supra, at 545–47."

*Ex parte Crispen*, 777 S.W.2d 103, 106 (Tex. Cr.App.1989) (Clinton, J., concurring). Seizing on this Court's apparent willingness to entertain such claims in our own habeas forum, the federal courts began to "dismiss federal writs under the rubric of exhaustion of state remedies. E.g., *Carroll v. Beto*, 379 F.2d 329 (C.A.5 1967)." *Id.*, at 107. With the 1967 amendments to Article 11.07, V.A.C.C.P., and this Court's gloss of those amendments in *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App.1967), this Court was fully in the business of reviewing federal constitutional claims in post-conviction applications for habeas corpus. As I observed in *Ex parte Crispen:*

"It seems all but certain that states are not compelled by any provision of the federal constitution to provide post-conviction collateral avenues for vindication of federal constitutional rights. See *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); Cf. *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965). Nevertheless, by incorporating the notion of the federal courts that a constitutional

defect can render a conviction 'void' into its own post-conviction habeas corpus jurisprudence, this Court did in fact provide such an avenue."

*Id.*, at 107. Even though the federales themselves have long ago abandoned the fiction that federal constitutional defects may render a conviction "void," *id.*, at 107–08, this Court has continued to recognize practically all federal constitutional claims as cognizable in state post-conviction habeas corpus. In essence, "we have agreed to review some merely 'voidable' claims in post-conviction collateral attack." *Id.*, at 109.

There may well be compelling policy reasons for this Court to entertain as cognizable in a post-conviction writ claims that may later be raised in the federal habeas forum.[1] Nevertheless, I have argued since 1989 that, if we are going to recognize federal constitutional claims at all in state habeas corpus proceedings, we ought at least to limit them to "exceptional" claims, invoking rights or guarantees "so fundamental to the fair operation of the system as to be 1) immune to procedural default, 2) not subject to a harm analysis, and 3) fully retroactive in application." *Ex parte Sadberry*, 864 S.W.2d 541, 545 (Tex.Cr.App.1993) (Clinton, J., dissenting). "I would also adopt a doctrine of excuses, entertaining any federal constitutional claim recognized as of the time of trial but for which a record could not have been made, despite due diligence of the accused, in time to preserve the error for direct appeal." *Id.* The Court has ignored my suggestions, adhering to the broader statement of habeas cognizability found in *Ex parte Banks, viz:* "Traditionally, habeas corpus is available only to review jurisdictional defects, or deni-

---

1. Professors Dix and Dawson argue that it is appropriate for this Court to consider federal constitutional claims in state collateral attack, for two, essentially policy, reasons:

 "First, this permits State courts to make factual findings that will be entitled to deference in any subsequent federal attacks that may be mounted on the convictions. Thus this approach gives the Texas courts as much control over these cases as is possible, given the continued availability of federal habeas to Texas defendants. Second, since the Texas authorities brought and processed the original proceedings, the state should properly assume re-

sponsibility for inquiry into claims that state authorities dramatically—and constitutionally—erred in carrying out that task. That federal courts remain available to conduct such inquiries if the Texas courts refuse to do so does not suggest that the state tribunals should not do so and thus burden the federal courts with responsibility for reviewing proceedings which the federal government had no responsibility for bringing."

Dix & Dawson, 43 Texas Practice: Criminal Practice and Procedure, Section 45.73 (1995), at 468.

als of fundamental or constitutional rights." 769 S.W.2d at 540 (citations omitted). Under this broader view of habeas cognizability, we have said that habeas applicants bringing federal constitutional claims that are subject to ordinary principles of procedural default and to analyses for harm must plead and prove lack of default and presence of harm before it can be said they have stated a claim entitling them to relief. *Ex parte Dutchover*, 779 S.W.2d 76 (Tex.Cr.App.1989); *Ex parte Barber*, 879 S.W.2d 889 (Tex.Cr.App.1994) (Plurality opinion); *Ex parte Fierro*, 934 S.W.2d 370 (Tex.Cr.App.1996). Whether or not one agrees that it was anomalous to recognize the whole gamut of federal constitutional claims, even those subject to procedural default and harm analysis, in state collateral attack, it cannot be gainsaid that the scope of the Great Writ has expanded to cover those claims. Once this Court has said what the scope of the Great Writ is, the Legislature is not free to impose temporal restrictions that effectively render a claim that falls within that scope unavailable. The Legislature especially cannot do this in the guise of making "the remedy speedy and effectual."

## II.

Section 5 of Article 11.071 prohibits this Court from considering the merits of any claim brought untimely or after a first timely application under the provisions of Section 4, unless the applicant can meet certain specific exceptions. An applicant filing a subsequent application is not entitled to counsel until after he has made the showing required of Section 5, according to Section 2(h). He must show, *sans* counsel, either that the factual or legal basis for his subsequent claim was not available as of the time for filing his first application, Section 5(a)(1); that, by a preponderance of the evidence, but for a federal constitutional violation, no rational jury would have convicted him, Section 5(a)(2); or that, by clear and convincing evidence, but for a federal constitutional violation no rational jury would have answered one or more of the Article 37.071 special issues in such a way as to assess the death penalty, Section 5(a)(3). Thus, this Court may not predicate relief upon any untimely,

unexcused claim of federal constitutional error that does not meet these strict "actual innocence" criteria. The "actual innocence" standard embodied in Subsections 5(a)(2) and 5(a)(3) mirrors that for bringing successive writ applications in federal habeas review of state convictions. See *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Two kinds of claim now cognizable in an initial post-conviction habeas corpus will not meet the criteria of Section 5 of Article 11.071. First, a claim of federal constitutional infirmity that was either brought in an earlier application, or else could have been, will not satisfy Section 5 unless accompanied by a valid claim of "actual innocence." This means that most federal constitutional defects, even those that the applicant can show contributed to his conviction or punishment (as he must, even in an initial application), will not present a basis for relief in a successive writ application. Second, a claim of jurisdictional defect or failure to abide a fundamental or "systemic" requirement, see *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App. 1993), even such as to render the conviction void, will most likely fail to meet the rigid criteria of Section 5. Thus, even the paradigm common law basis for relief in a post-conviction habeas corpus application is unavailable under Article 11.071 to an applicant who could have raised the claim in an earlier application, but failed to. These cognizable claims—held by this Court to be cognizable because so weighty as to defeat the State's otherwise legitimate interest in the finality and repose of its convictions—are rendered out of reach because untimely.

The Court concludes that placing such claims beyond the successive applicant's effective reach "does not prevent this Court from exercising its constitutional powers over the writ of habeas corpus." Majority op. at 219. But purporting to render what this Court has recognized as cognizable claims beyond this Court's authority even to scrutinize, much less grant relief, does nothing if *not* prevent this Court from exercising its constitutional writ power. Judge McCormick likens the Article 11.071 limitations on successive writs to the notion expressed by

Judge Teague, in his dissenting opinion in *Ex parte Renier*, 734 S.W.2d 349 (Tex.Cr.App. 1987), that the Legislature can prescribe what amounts to proper venue for granting habeas corpus relief. Judge McCormick's idea is, as I understand it, that as long as it does not "make the writ *unavailable* ... or *eliminate altogether* the power of courts to employ it[,]" the Legislature may regulate "*when* an applicant must seek ... relief." Concurring op. at 225. Because all constitutional, jurisdictional or fundamental claims will be entertained in a *timely* initial application, Article 11.071 does not "suspend" the writ.

But in my view Judge McCormick's analogy fails. It is obvious that prescribing *where* habeas relief must be granted neither renders the writ unavailable nor eliminates it. A deserving applicant can always obtain relief, so long as he makes his application in the proper forum. When he applies in the wrong forum and fails to obtain relief, he can still apply in the proper forum and get his relief there. But prescribing *when* habeas relief may be granted is another matter. Article 11.071 provides what I presume to be the exclusive procedure for obtaining habeas corpus relief from a judgment imposing a sentence of death.[2] Yet, there are claims this Court has always regarded, or has come to regard over the years, as cognizable on collateral attack that are placed beyond this Court's ability to grant relief, even if the applicant can show he is deserving. Because a writ challenging a capital conviction cannot be made returnable in any court but this one, no other court can grant a deserving capital applicant relief. Legitimate habeas corpus relief is thus made "unavailable." This Court's power to grant that relief is "eliminated altogether." The writ can hardly get more "suspended" than that!

I am not unmindful of the opinion of the United States Supreme Court in *Felker v. Turpin*, 518 U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). There the petitioner contended that certain abuse of the writ provisions in the Antiterrorism and Effective

Death Penalty Act of 1996 operated to suspend the federal writ of habeas corpus, in violation of Article I, Section 9, the Suspension Clause of the United States Constitution. The Supreme Court dispatched this claim almost summarily, observing:

> "In *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), we said that 'the doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.' *Id.*, at 489, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517. The added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a 'suspension' of the writ contrary to Article I, § 9."

*Id.*, at ——, 116 S.Ct. at 2340, 135 L.Ed.2d at 840. But unlike the Supreme Court, this Court has no seasoned jurisprudence pertaining to abuse of the writ, nothing at all to compare to *McCleskey v. Zant* and the cases cited therein. It is true that on rare occasions we have paid lip service to a fairly strict notion of abuse of the writ. See *Ex parte Carr*, 511 S.W.2d 523 (Tex.Cr.App. 1974). But in practice we have always allowed an inmate to file any number of habeas applications, often raising the same contentions time after time, or raising new contentions that easily could have been incorporated in an earlier writ or writs. Typically he will not be cited for abuse of the writ until his repetition has severely tested the limits of the Court's patience. See e.g., *Ex parte Dora*, 548 S.W.2d 392, at 393 (Tex.Cr.App. 1977) (Court cited applicant for abuse of the writ for bringing same claims, not merely a second time, but "over and over again"). The reality is that we have never judicially imposed anything approaching a rigorous abuse of the writ doctrine in Texas.

Nor has the Legislature ever before codified one. Heretofore the only statutory contributions to the post-conviction habeas

---

2. Article 11.07, § 5, V.A.C.C.P., expressly provides that it is the exclusive procedure for collaterally attacking a noncapital conviction. While I find no comparable provision in Article 11.071, I nevertheless presume the Legislature meant for it to be the exclusive procedure for collaterally attacking a capital conviction.

process have been procedural in nature, designed to *facilitate* the review of federal constitutional claims in State habeas corpus, not to *restrict* it. *Ex parte Young,* supra. See also *Ex parte Truong,* supra, at 812–13 ("Thus the constitutional provisions guarantee availability of the Great Writ pursuant to legislative enactments designed to enable an applicant to make a collateral attack and to obtain relief against a final judgment of conviction rendered void not only for reasons under the common law but also for want of jurisdiction of the convicting court to enter it where the conviction was had in violation of due process."); *Ex parte Banks,* supra, at 547 (Clinton, J., dissenting) (same). Thus, it simply cannot be said in Texas that depriving this Court of authority to rule on cognizable post-conviction habeas claims is just an incremental step in some "evolutionary process" of "historical usage, statutory developments, and judicial decisions." We have no history of delimiting availability of the Great Writ—in fact, quite the contrary. The Supreme Court's analysis in *Felker v. Turpin,* such as it is, does not lend itself to ready application under the Texas Constitution.

Moreover, there are differences between the federal Suspension Clause and our own. Article I, Section 9 of the United States Constitution describes the writ of habeas corpus as a "Privilege," which may, albeit under extremely rare and narrow circumstances, be suspended. In Texas, by contrast, at least since the Constitution of 1876, Article I, Section 12 of the Texas Constitution declares the writ of habeas corpus to be "a writ of right, [which] shall never be suspended." Nevertheless, after today's decision in this cause, some post-conviction applicants for writ of habeas corpus who are able to show their convictions are "void," either for jurisdictional or constitutional reasons, will be entitled to relief, while others who can show identically invalid convictions will not. The only difference is that those who obtain relief will have brought their claims within the temporal limitations prescribed by the Legislature. In my view, suspending the writ as to some, but not all, still amounts to suspending the writ.

Nobody is more solicitous of the State's interest in the finality of its hard-won convictions than I am. That is the reason I have advocated a stricter jurisprudence of cognizability of claims in post-conviction habeas corpus. But the Legislature cannot both leave this Court's overly-broad pronouncements as to the scope of the writ intact, and at the same time designate that some applicants raising matters cognizable under the writ are entitled to relief, while others, raising those same cognizable matters, are not. Whether the Legislature can prescribe cognizability of claims on post-conviction habeas corpus pursuant to its constitutional authority to "regulate" this Court's power to issue the writ, under Article V, Section 5 of the Texas Constitution, is a question we need not address today. This is because Article 11.071 does not purport to speak to the scope of the writ, only to when it must be brought. Unfortunately, in regulating the time within which a writ must be brought, the statute abrogates this Court's authority to grant relief for claims we have deemed, without legislative contradiction, cognizable in post-conviction habeas corpus. That, in my opinion, "suspends" the writ.

Once the appellate process has run its course and a criminal conviction becomes final, confinement pursuant to that conviction is either lawful, or it is unlawful, for purposes of post-conviction habeas corpus. Indeed, what it means to say a claim is cognizable in habeas corpus is that if the claim is borne out, the applicant's confinement has been shown to be legally intolerable, notwithstanding the State's interest in repose. For purposes of collateral attack, the lawfulness of confinement cannot rationally be made to turn on when it is challenged. What we can all agree is my illegal confinement today does not become legal confinement tomorrow by virtue of the fact that I neglect to complain about it until then. Likewise, a sentence of death is either legal or not for purposes of post-conviction collateral attack. It cannot be unlawful to execute me one day, but lawful the next, simply because I delay calling the illegality to the Court's attention. Yet that is the manifest intent and effect of Article 11.071, Section 5. I believe that suspends

what Article I, Section 12 declares "shall never be suspended." I therefore dissent.

MALONEY, J., joins.