Ex parte John Avalos ALBA, Applicant.

No. AP–75,510.

Court of Criminal Appeals of Texas.

June 9, 2008.

Anthony S. Haughton, Houston, for Appellant.

Jeffrey Garon, Asst. Crim. D.A., McKinney, Jeffrey L. Van Horn, State's Attorney, Austin, for the State.

## OPINION

MEYERS, J., announced the judgment of the Court and delivered an opinion in which KELLER, P.J., and KEASLER, and HERVEY, JJ., joined.

Applicant was found guilty of capital murder and, pursuant to the jury's answers to the special issues, the trial court assessed a sentence of death. In *Alba v. State*, 905 S.W.2d 581 (Tex.Crim.App. 1995), we affirmed the conviction and sentence. Applicant then filed an application for writ of habeas corpus, which we denied. In 2000, the Fifth Circuit reversed Applicant's sentence and remanded the case for a new sentencing hearing. Based on the second jury's answers to the special issues, Applicant was again sentenced to death. We affirmed the sentence on appeal and again denied habeas relief. Applicant did not raise claims related to the lethal-injection procedure until he filed for federal habeas corpus relief. As a result, the federal district court determined that the claim was unexhausted and ordered Applicant to raise the issue in state court. Accordingly, Applicant filed this subsequent application for writ of habeas corpus, claiming that the chemical protocol used for lethal injection is unconstitutional because it may cause unnecessary pain. We

filed and set this case to determine whether a claim that the lethal-injection protocol may violate the constitutional rights of the condemned is cognizable in a writ of habeas corpus under Texas Code of Criminal Procedure Article 11.071.[1] We hold that it is not and dismiss the application.

## ARGUMENTS OF THE PARTIES

Applicant contends that the particular three-drug cocktail currently used by the State of Texas to administer a death sentence by lethal injection conflicts with Article 1, Section 13 of the Texas Constitution, which requires that the death sentence be administered in a manner comporting with the dignity of man, and the Eighth and Fourteenth Amendments of the United States Constitution, which prohibit cruel and unusual punishment.

According to Applicant, the drug combination used in the lethal-injection process is unconstitutional because it carries a strong likelihood of creating gratuitous suffering. Applicant states that the first drug administered, sodium thiopental, is a fast-acting barbiturate ordinarily used to induce unconsciousness in a surgical patient for a brief period of time, but the anesthetic benefits of sodium thiopental are neutralized upon administration of the second drug, pancuronium bromide, also known as Pavulon. Additionally, Applicant states that the pancuronium bromide is unnecessary in the lethal injection process and would result in needless pain because it paralyzes the skeletal and voluntary muscles, but has no effect on consciousness or on perception of pain. The second drug serves only to mask the painful effects of the third drug injected, but would not prevent him from experiencing pain while dying. Finally, Applicant argues that the administrators of the injec-

tions are untrained in anesthesiology and, therefore, improper and inadequate anesthetization occurs during the execution process.

The State argues that a writ of habeas corpus is not the proper vehicle to seek relief. Since Applicant is not contesting the validity of his conviction or his death sentence, but contends that the manner of proposed execution is unconstitutional, his complaint is not cognizable under Article 11.071. Because the application does not request relief from his conviction or death sentence, rather it seeks only to challenge a circumstance of his conviction, habeas corpus cannot provide a remedy. The State contends that the Legislature granted the authority to determine the specific lethal-injection process to the Texas Department of Criminal Justice, thereby making it outside the scope of habeas corpus.

The State also argues that Applicant's claims are not yet ripe for consideration because his execution date is not imminent. As a result, the Texas Department of Criminal Justice may plan to use a different concoction, or the constitutionality of the current cocktail may have been resolved when the date of Applicant's execution is scheduled. Additionally, other avenues are available, such as injunction, mandamus, or a civil-rights lawsuit. Finally, because the Texas lethal-injection protocol has been in place, unchanged, since 1982, the factual basis for Applicant's claim is not new. Therefore, the State argues that the requirements for filing an Article 11.071, Section 5, habeas application have not been met because Applicant could have asserted his challenge to the drug mixture in an earlier application.

---

1. Unless otherwise specified, all references to "Article" refer to Texas Code of Criminal Procedure.

## ANALYSIS

▮ An application for a writ of habeas corpus must state a claim that, if true, would entitle the applicant to habeas relief. And, the claim must challenge the judgment against the applicant or seek to change his sentence. As we stated in *Ex Parte Lockett*, 956 S.W.2d 41, 42 (Tex. Crim.App.1997), the relief sought must request a change of either the fact or the length of confinement. A writ application filed pursuant to Article 11.071 must seek "relief from a judgment imposing a penalty of death." A death-penalty writ application that does not challenge the validity of the underlying judgment and which, even if meritorious, would not result in immediate relief from a capital-murder conviction or death sentence, is not a proper application for purposes of Article 11.071. *See Ex Parte Kerr*, 64 S.W.3d 414, 419 (Tex.Crim.App.2002). The issue in *Kerr* was whether a document that was titled a writ application, but that did not attack the conviction or sentence, was sufficient to constitute an initial application that would bar consideration of a subsequent writ under Article 11.071, Section 5. We determined that the initial document did not bar the subsequent writ application because the document did not state a claim seeking relief from the conviction. Here, we are not considering whether the application is sufficient; we are determining whether the relief requested is cognizable in a writ of habeas corpus. While the issue under consideration differs in this case, the determination is the same—in order to be cognizable on habeas, a writ application is required to state a claim that challenges the judgment or the sentence.

Applicant does not claim that he has been subjected to illegal custody or unlawful or unconstitutional restraint. He does not challenge his verdict of guilt or the sentence of death; he merely opposes the specific protocol used to administer the drug combination. A similar issue was raised in *Hill v. McDonough*, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), in which the Supreme Court considered whether a claim challenging the constitutionality of the lethal-injection process had to be raised in an application for writ of habeas corpus or could be raised as a civil-rights action. Because the complaint challenged the particular method that was likely going to be used for execution rather than challenging the death sentence in general, the Court determined that the challenge could proceed as a civil-rights action rather than in a writ of habeas corpus. While *Hill* determined only that this type of claim did not *have* to be raised on habeas rather than that it *could not* be raised on habeas, the Court's reasoning is instructive. Since the relief sought would not foreclose execution, and the claim does not challenge the sentence of death or seek to establish unlawfulness that would render the conviction or sentence invalid, habeas corpus was not the proper method for raising the claim. The same is true here. Applicant is not requesting relief from his sentence, he is simply challenging a circumstance of his sentence that does not impact the legality of his confinement. Applicant's claim challenges neither the validity of the conviction nor the sentence of death, only the method that may be used to impose the death sentence.

Like the Florida law considered in *Hill*, the specific mixture used for lethal injection is not mandated by statute in Texas. Our Legislature stated in Code of Criminal Procedure Article 43.14 that,

> Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised

by the Director of the institutional division of the Texas Department of Criminal Justice.

Thus, even if the mixture currently used for lethal injection is determined to violate the Eighth Amendment,[2] Applicant would still not be entitled to release or retrial—he would still be subject to the same sentence, which would be carried out using a different mixture as determined by the Texas Department of Criminal Justice.[3] Additionally, the three-drug mixture Applicant complains about may not even be used when the date of his execution is set. Therefore, any consideration of the merits would result in a declaratory judgment and would not result in relief for Applicant. *See Ex Parte Puckett,* 161 Tex. Crim. 51, 274 S.W.2d 696, 697 (1954) (stating, "This court is not authorized to enter a declaratory judgment.") Because Applicant has not raised a claim that, if true, would entitle him to relief, this claim is not cognizable on habeas.

■ Applicant is essentially asking us to increase the scope of Article 11.071 to include possible future constitutional violations. We decline to do so. This goes to the issue of ripeness rather than cognizability. The function of Article 11.071 is to address violations that have occurred. This is why a claim challenging the implementation of a death sentence is not ripe on direct appeal. *See Gallo v. State,* 239 S.W.3d 757, 780 (Tex.Crim.App.2007). Habeas corpus serves to remedy existing constitutional violations; it is not for claims that a statute may potentially be applied in a way that may possibly be determined to be unconstitutional in the future. We do not grant habeas corpus relief on an abstract proposition. *See Walker v. Wainwright,* 390 U.S. 335, 336, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968) (stating, "Whatever its other functions, the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention."); *Bailey v. Gallagher,* 75 Wash.2d 260, 265–266, 450 P.2d 802 (1969) ("The function of a writ of habeas corpus is to inquire into the legality of the particular restraint being then imposed upon the petitioner. It is not to inquire into the validity of some future restraint that may or may not be imposed.") (citations omitted). However, ripeness is not the issue before us. The issue before us is whether Applicant has raised a claim that is properly considered under Article 11.071. Because Applicant is not complaining about the sentence of death, we hold that Article 11.071 is not the proper avenue for relief.

Finally, Applicant points to our consideration of time-credit claims, out-of-time appeals, and parole-revocation claims as an indication that issues other than those dealing with the legality of the confinement or the sentence are cognizable habeas claims. We disagree. Parole revocation claims deal with the fact of confinement, time-credit claims deal with the duration of the confinement, and both seek release from custody. Out-of-time appeals are requests to lift a procedural bar in order to have heard the merits of the underlying habeas claim, which must challenge the verdict of guilt or the legality of the confinement.

---

**2.** We note that the Supreme Court recently held in *Baze v. Rees,* —— U.S. ——, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) that the Kentucky lethal-injection procedure, which uses the same three-drug combination as Texas, does not violate the Eighth Amendment.

**3.** If the Director chose a method of execution that had been determined to be unconstitutional, such as the dissent's example of the Director choosing to have the Applicant "drawn and quartered," he would be subject to a writ of prohibition. This example is irrelevant, however, since the statute specifies that the sentence shall be executed by lethal injection.

**CONCLUSION**

Applicant has not brought forth any claims attacking the legality of his conviction or sentence and has not raised any issues which, if resolved in his favor, would entitle him to a new trial or a new sentencing hearing. Therefore, Applicant's claim is not cognizable under Article 11.071. The application for writ of habeas corpus is dismissed.

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

PRICE, J., filed a dissenting opinion.

JOHNSON, J., filed a dissenting opinion in which HOLCOMB, J., joined.

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

I concur in the Court's decision to dismiss this application for a writ of habeas corpus. Although I agree with the Court that applicant's claim is not cognizable under Article 11.071,[1] I believe that a "lethal-injection protocol" claim may be brought as an original writ application under the Texas Constitution, as a writ of prohibition if an execution date has been set, or as a civil-rights lawsuit. I also believe that applicant is sufficiently close to an execution date that his constitutional claim is ripe for review by this Court. I would recharacterize this application as an original writ

1. TEX.CODE CRIM. PROC. art. 11.071.

2. 128 S.Ct. 1520 (2008).

3. 190 S.W.3d 677 (Tex.Crim.App.2006).

4. TEX.CODE CRIM. PROC. art. 11.071, § 1.

5. *Id.*

6. *Ex parte Kerr,* 64 S.W.3d 414, 419 (Tex. Crim.App.2002). The same is true of a post-conviction writ application filed in non-death-penalty cases under Article 11.07. *See also Ex parte Reyes,* 209 S.W.3d 126, 127 (Tex.

and dismiss applicant's claim pursuant to the Supreme Court's decision in *Baze v. Rees,*[2] our prior decision in *Ex parte O'Brien,*[3] and the evidence submitted in this and other Texas death-penalty cases concerning the constitutionality of the lethal-injection protocol. Applicant has failed to make a prima facie showing of any constitutional violation.

**A. This claim is not cognizable under Article 11.071.**

A writ application filed pursuant to Article 11.071 must seek "relief from a judgment imposing a penalty of death."[4] Section 1 of that statute reads as follows:

Notwithstanding any other provision of this chapter, this article establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death.[5]

A "death penalty 'writ'" that does not challenge the validity of the underlying judgment and which, even if meritorious, would not result in immediate relief from [a] capital murder conviction or death sentence," is not a proper writ application for purposes of Article 11.071.[6] Opening Article 11.071 (and, by analogy, Article 11.07) to claims that a "condition or circumstance of an inmate's confinement amounts to an incremental restraint upon his residual liberty interest,"[7] would open a Pandora's

Crim.App.2006) (inmate may not challenge trial court's denial of post-conviction motion for DNA analysis by means of application for habeas corpus relief because "proceedings under Chapter 64 do not themselves challenge an inmate's conviction or sentence"); *Ex parte Lockett,* 956 S.W.2d 41, 41 (Tex. Crim.App.1997) (relief sought under Art. 11.07 must request a change of either the fact or the length of confinement); *Ex parte Rieck,* 144 S.W.3d 510, 519 (Tex.Crim.App.2004) (Art. 11.07 habeas claims "challenge the fact or duration of confinement (or restraint) rather than the conditions of confinement.").

7. Dissenting Op. at 698.

Box of new and exotic "conditions of confinement" habeas claims and vastly increase the dockets of both trial courts and this Court. Applicant does not challenge his conviction. He does not challenge his death sentence. He does not even challenge the means of carrying out his death sentence by lethal injection.[8] He states:

> Mr. Alba is not challenging the method of execution (death by lethal injection) that exists in Texas. He is not alleging that the intravenous injection of *any* substance sufficient to cause his death constitutes cruel and unusual punishment, and he accepts that a substance may be injected to administer his lethal injection sentence. But, Mr. Alba is challenging the injection of the three drug cocktail as currently authorized under Texas law.[9]

His complaint focuses solely upon the specific lethal-injection protocol that the Texas Department of Criminal Justice (TDCJ) has implemented. He asserts that this methodology "has a strong likelihood of creating gratuitous suffering," and he relies upon a study commissioned by a defense lawyer in Florida which was reported, without peer review,[10] in the British medical journal, *Lancet.*[11]

This is not a claim that is cognizable under Article 11.071. As the Supreme Court stated in *Hill v. McDonough,*[12]—a Florida civil-rights action raising this same "lethal-injection protocol" claim—when a lawsuit does not challenge the execution procedure mandated by law, any relief concerning the method by which it is carried out would not imply that the sentence itself was unlawful.[13] In Texas, as in Flor-

---

8. Texas law states that the death penalty is to be carried out by "intravenous injection of a substance or substances in a lethal quantity sufficient to cause death[.]" Tex.Code Crim. Proc. art. 43.14.

9. Petition for Writ of Habeas Corpus at 14.

10. *See Ex parte Aguilar,* No. WR–36,142–03, 2006 WL 1412666, at *2–3 (Tex.Crim.App. May 22, 2006) (Cochran, J., concurring) (raising concerns about the scientific reliability of the *Lancet* report and concluding that "this study raises questions but provides no answers") (not designated for publication).

11. In *Baze,* the United States Supreme Court noted the controversy surrounding this particular study. 128 S.Ct. at 1532 n. 2. It stated,

    [S]hortly after the Lancet study appeared, peer responses by seven medical researchers criticized the methodology supporting the original conclusions. See Groner, Inadequate Anaesthesia in Lethal Injection for Execution, 366 Lancet 1073–1074 (Sept. 2005). These researchers noted that because the blood samples were taken "several hours to days after" the inmates' deaths, the postmortem concentrations of thiopental—a fat-soluble compound that passively diffuses from blood into tissue—could not be relied on as accurate indicators for con-

centrations during life. *Id.,* at 1073. The authors of the original study responded to defend their methodology. *Id.,* at 1074–1076....

    We do not purport to take sides in this dispute. We cite it only to confirm that a "best practices" approach, calling for the weighing of relative risks without some measure of deference to a State's choice of execution procedures, would involve the courts in debatable matters far exceeding their expertise.

*Id. See also Ex parte Aguilar, supra* note 10; *Rutherford v. State,* 926 So.2d 1100, 1113–14 (Fla.2006) (rejecting the argument that the study published in *The Lancet* presented new scientific evidence that Florida's lethal-injection procedure possibly created a foreseeable risk of the gratuitous infliction of unnecessary pain on the person being executed), *cert. denied,* 546 U.S. 1160, 126 S.Ct. 1191, 163 L.Ed.2d 1145 (2006).

12. 547 U.S. 573, 580, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006).

13. *Id.* at 582, 126 S.Ct. 2096 (stating that when a lawsuit does not challenge the procedure mandated by statute, relief would not imply the unlawfulness of the sentence, but noting, "If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper.").

ida, the specific drug mixture and the specific protocol for administering those drugs is not mandated by statute.[14] Thus, in this case, even if we were to find that applicant's concerns about the Texas lethal-injection protocol were valid, his conviction for capital murder and death sentence by lethal injection would remain intact. Only the specific method by which TDCJ has chosen to implement the death sentence by lethal injection would be subject to revision if the current methodology were found to violate the Eighth Amendment. This claim challenges the *manner* by which an administrative agency has, in its discretion, implemented an admittedly lawful punishment. This is a circumstance-of-punishment allegation, one that is routinely examined under 42 U.S.C. § 1983 as a civil-rights complaint; it is not a challenge to the conviction or sentence.[15]

Applicant could certainly bring this civil-rights claim in either federal or Texas state court. It has been done by many other death-row inmates, and it was done in the case so recently decided by the United States Supreme Court.[16] But this Court might also entertain an original writ of habeas corpus filed pursuant to the Texas Constitution in a death-penalty case when Article 11.071 cannot be invoked because of the explicit limitation of Section 1.

I would recharacterize applicant's complaint as an action brought pursuant to this Court's original habeas corpus jurisdiction under Article V, § 5 of the Texas Constitution.[17] Although Article 11.071 provides the exclusive procedures for a writ in which a death-row inmate may seek habeas relief from his conviction or sentence, no Texas statute limits the authority or jurisdiction of this Court to consider an original habeas application by such an inmate seeking relief from an unconstitutional *manner* of carrying out his admittedly lawful sentence.[18] Although we have the

**14.** Article 43.14 of the Code of Criminal Procedure states,

> Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the Director of the institutional division of the Texas Department of Criminal Justice.

TEX.CODE CRIM. PROC. art. 43.14.

**15.** *Hill,* 547 U.S. at 583, 126 S.Ct. 2096 (Florida death-row inmate's challenge to the three-drug lethal-injection protocol properly brought as a civil-rights lawsuit instead of an application for habeas corpus relief because "it could not be said that the suit seeks to establish 'unlawfulness [that] would render a conviction or sentence invalid'") (quoting *Heck v. Humphrey,* 512 U.S. 477, 486, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

**16.** *Baze v. Rees,* 128 S.Ct. 1520 (2008).

**17.** Article V, § 5(c) of the Texas Constitution reads as follows:

> Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments. The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

**18.** *State ex rel. Wilson v. Briggs,* 171 Tex.Crim. 479, 351 S.W.2d 892, 894 (1961) (orig.proceeding) ("The original jurisdiction of this court to issue writs of habeas corpus is unlimited."); *see also Ex parte Thompson,* —— S.W.3d ——, ——, No. AP–75,720, 2008 WL 696476, at *2 (Tex.Crim.App. March 5, 2008) (quoting *Briggs* and stating that the Court's original jurisdiction to issue writs of habeas corpus permits it to review a trial court's contempt order).

authority to exercise original-writ jurisdiction under the Texas Constitution, that is a power that we should exercise with great caution. Nonetheless, given the gravity of the claim presented and the inability of a Texas civil court to enjoin the carrying out of a lawful criminal sentence in the context of a civil-rights lawsuit,[19] I would exercise it in this specific situation.

## B. Applicant's Claim is Ripe for Consideration.

We have held, in both published and unpublished opinions, that a claim concerning the lethal-injection protocol is not ripe for review in a direct appeal of a capital-murder conviction and sentence.[20] I have previously stated that such a claim "certainly is ripe for review once an execution date is set."[21] We have never decided whether a lethal-injection claim is ripe for consideration in an original habeas application after direct appeal, but before an execution date has actually been set. I would hold that an execution is sufficiently "imminent" after the direct-appeal process is complete such that a claim concerning the method of execution may be ripe for review in a later original habeas corpus application. A death-row inmate need not wait until the moment of execution, or even the day after his execution date has been set, to challenge the administrative procedure by which his sentence is to be carried out. "Imminence" is a matter of degree; it is not a matter of pluperfect timing with a race to the courthouse against a 30–day execution deadline. Furthermore, the United States Supreme Court did not find that a death-row inmate was required to wait until an execution date was set before it would consider a claim relating to the constitutionality of the lethal-injection protocol filed in a declaratory judgment lawsuit.[22]

The direct appeal of a person convicted of capital murder and sentenced to death may take several years to proceed from the trial court to this Court and, perhaps, to the Supreme Court. But that is only the beginning of the review of a death-penalty case. At least one full round of habeas corpus review in both state and federal courts will generally be conducted as well. According to the TDCJ, the average length of time from the imposition of a death sentence until its execution is 10.26 years.[23] Given the extraordinary length of time between conviction and execution, one would not be amiss in thinking that TDCJ might modify its lethal-injection protocol in the interim.

**19.** *See State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 395–96 (Tex.Crim. App.1994) (orig.proceeding) (holding that any order by another state court purporting to stay an execution unlawfully circumvents the exclusive jurisdiction of the Court of Criminal Appeals in a death-penalty conviction).

**20.** *See Gallo v. State*, 239 S.W.3d 757, 780 (Tex.Crim.App.2007) (holding, on direct appeal of capital conviction, that defendant's execution is not "imminent," thus the "method in which the lethal injection is currently administered is not determinative of the way it will be administered at the moment of [defendant's] execution"); *see also Richardson v. State*, No. AP–75,200, 2008 WL 217973, at * 5 (Tex.Crim.App. Jan. 23, 2008) (not designated for publication) (same); *Thompson v. State*, No. AP–73,431, 2007 WL 3208755, at *6 (Tex. Crim.App. Oct.31, 2007) (not designated for publication) (lethal-injection-protocol claim "is not ripe for review on direct appeal"); *Doyle v. State*, No. AP–74,960, 2006 WL 1235088, at *4 (Tex.Crim.App. May 10, 2006) (not designated for publication) (same).

**21.** *Ex parte O'Brien*, 190 S.W.3d 677, 679 n. 2 (Tex.Crim.App.2006) (Cochran, J., concurring).

**22.** *See Baze v. Rees*, 128 S.Ct. 1520, 1529 (2008).

**23.** "Death Row Facts," Texas Department of Criminal Justice, http://www.tdcj.state.tx.us/ stat/drowfacts.htm (last visited June 9, 2008).

Applicant, however, was first sentenced to death in May, 1992–sixteen years ago. This Court affirmed his sentence on direct appeal in 1995,[24] but that sentence was vacated by the Fifth Circuit in 2000.[25] After a retrial on punishment, applicant was again sentenced to death, and that sentence was affirmed by this Court in 2003–five years ago.[26] In that same year, we denied relief on his application for a writ of habeas corpus filed pursuant to Article 11.071.[27] In May of 2005, applicant filed a writ of habeas corpus in federal district court. The federal court then granted applicant's motion to stay further proceedings until he had exhausted a newly raised claim concerning the constitutionality of the Texas lethal-injection protocol in state court. That is the claim presently pending before this Court. Thus, applicant is well down the winding road of appellate review of his death sentence. Given the federal court's stay in its proceedings to give Texas state courts an opportunity to assess the merits of applicant's lethal-injection claim before the federal courts do so, we should not reject that opportunity on the basis of ripeness. Applicant's execution is sufficiently imminent (as the relatively slow wheels of justice grind in death-penalty cases) to consider whether he has made a colorable constitutional claim. I would do so.

**C. Applicant Has Not Made a Prima Facie Showing of a Constitutional Violation.**

In the context of an Article 11.071 subsequent writ application, an applicant fails to surmount the Section 5 procedural bar to allow for the consideration of the merits of a subsequent claim if he fails to make a prima facie showing of a constitutional violation.[28] This is a state-law procedural bar that the Legislature has enacted and that this Court must enforce. In those cases, we dismiss the subsequent application without returning it to the trial court to make factual findings because we have already determined that the applicant has not pled sufficient facts that, even if proven, could support relief. I would apply that same procedural bar to any claim brought pursuant to our constitutional original writ authority.

In the present case, then, applicant was required to plead sufficient facts that, if proven, would support relief on his constitutional claim that the current TDCJ lethal-injection protocol violates the Eighth Amendment. This he has not done. The United States Supreme Court upheld the constitutionality of the Kentucky lethal-injection protocol in *Baze* over a month ago.[29] Applicant based his Eighth Amendment claim upon the very similar protocol that is employed by Kentucky. He has not filed any supplemental pleadings since *Baze* in an attempt to distinguish the Kentucky protocol from that used in Texas. TDCJ, however, has filed a post-*Baze* supplemental pleading in an allied case, *Ex parte Chi*, also delivered this day,[30] in which it graphically charts the similarities between the Texas and Kentucky lethal-

**24.** *Alba v. State,* 905 S.W.2d 581 (Tex.Crim. App.1995).

**25.** *Alba v. Johnson,* 232 F.3d 208 (5th Cir. 2000).

**26.** *Alba v. State,* No. 71,487, 2003 WL 1888989 (Tex.Crim.App. April 16, 2003) (not designated for publication).

**27.** *Ex parte Alba,* No. WR–36,711–02 (Tex. Crim.App. Oct. 15, 2003).

**28.** *Ex parte Brooks,* 219 S.W.3d 396, 400–01 (Tex.Crim.App.2007) (noting that, in a subsequent application, a habeas applicant must make a prima facie showing of facts that establish a cognizable constitutional claim); *Ex parte Staley,* 160 S.W.3d 56, 64 (Tex.Crim. App.2005).

**29.** The decision in *Baze* was delivered on April 16, 2008. 128 S.Ct. at 1520.

**30.** *Ex parte Chi,* 256 S.W.3d 702 (Tex.Crim. App.2008).

injection protocols.[31] Based upon TDCJ's supplemental pleading, I can find no constitutionally relevant dissimilarities between the two protocols. Applicant does not suggest otherwise. Further, this Court has previously rejected such "lethal-injection protocol" claims that were brought in subsequent writs filed under Article 11.071 as procedurally barred because they did not make a prima facie showing of a constitutional violation.[32] For all of the reasons that this Court sets out in rejecting the lethal-injection protocol claim in *Ex parte Chi*, I would reject applicant's same claim in this case, regardless of whether that claim may be addressed under Article 11.071 or as an original writ. The appropriate mechanism for doing so is by dismissing the writ because it does not plead sufficient facts to support relief, even if the applicant could prove the specific facts that he alleges.

I therefore concur in the Court's dismissal of applicant's writ application.

PRICE, J., filed a dissenting opinion.

Eight months ago, the momentum of the death machine in Texas propelled us to an unseemly execution. On the same day that the United States Supreme Court agreed to examine the constitutionality of the Kentucky protocol for lethal injection,[1] Michael Richard died on the gurney before the mechanism could grind to a halt. The Supreme Court has since spoken, and a plurality has provided us with a standard for measuring the constitutionality of our own execution protocol.[2] The question for

---

**31.** *See* Supplemental Brief of the Texas Department of Criminal Justice, Correctional Institutions Division, filed on May 9, 2008.

**32.** *Ex parte O'Brien*, 190 S.W.3d 677, 678 (Tex.Crim.App.2006) (dismissing subsequent habeas corpus application that raised lethal-injection-protocol claim); *Ex parte Moore*, No. WR–51,910–02, 2007 WL 117702, at *1 (Tex. Crim.App. Jan. 16, 2007) (not designated for publication) (dismissing subsequent habeas corpus application as procedurally barred by Section 11.071, § 5 because applicant failed to make a prima facie case that the Texas lethal-injection protocol violated the constitution); *Ex parte Aguilar*, No. WR–36,142–03, 2006 WL 1412666 (Tex.Crim.App. May 22, 2006) (not designated for publication) (same).

**1.** *Baze v. Rees*, —— U.S. ——, 128 S.Ct. 34, 168 L.Ed.2d 809, *amended* —— U.S. ——, 128 S.Ct. 372, 169 L.Ed.2d 256 (2007).

**2.** In *Baze v. Rees*, —— U.S. ——, 128 S.Ct. 1520 (2008), the plurality articulated a standard for deciding whether a particular method of execution violates the Eighth Amendment prohibition against cruel and unusual punishments in light of the availability of alternatives that are arguably more humane. It will not suffice to establish such a claim, the *Baze* plurality reasoned, merely to show that "a slightly or marginally safer alternative" exists to the current execution regime. 128 S.Ct. at 1531.

> Instead, the proffered alternative must effectively address a substantial risk of serious harm. * * * To qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as "cruel and unusual" under the Eighth Amendment.

*Id.* at 1532. Measuring Kentucky's lethal-injection protocol against this standard, the *Baze* plurality concluded that it passed Eighth Amendment muster, essentially because the first of the three drugs administered was conceded to be sufficient to anaesthetize the condemned prior to administration of the other two drugs, and Kentucky's safeguards for assuring that the first drug was properly administered, while not necessarily optimal, were deemed adequate. *Id.* at 1532–38. While Texas's lethal-injection protocol, from what I know of it, utilizes the same three drugs, we have yet to litigate in Texas whether the safeguards in place (whatever they are) for assuring proper administration of the first, anesthetizing drug are at least as comprehensive as Kentucky's.

our consideration is whether our own lethal-injection protocol, particularly the protocol for assuring that the first anesthetic drug is properly administered, is "substantially similar" to that in Kentucky which the plurality upheld.[3] Today, a plurality of this Court dismisses two habeas corpus applications raising such a claim,[4] holding that the claim is not cognizable under Article 11.071of the Texas Code of Criminal Procedure, our capital habeas corpus statute.[5] In my view, the claim falls comfortably within the ambit of the statute. Nevertheless, the Court insists on withholding the rudiments of due process and due course of law in its equally unseemly haste to crank the machine back up. I cannot go along with this.

## COGNIZABILITY UNDER ARTICLE 11.071

I have argued in the past that a challenge to our lethal-injection protocol ought to be entertained in a subsequent application for writ of habeas corpus under Section 5 of Article 11.071.[6] I have also dissented to the Court's unwillingness in the past even to consider "whether a challenge to the lethal-injection protocol actually constitutes a post-conviction application for writ of habeas corpus *at all,* under Article 11.071, since it may not constitute a challenge to 'a judgment imposing a penalty of death.' "[7] Today the Court finally reaches the question of cognizability of such a claim and concludes that it is not cognizable. I disagree.

"The writ of habeas corpus is a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny."[8] Even a death-row inmate retains certain residual—albeit necessarily limited, but nevertheless constitutionally protected—liberty interests.[9] Among those is the interest in not having the executive branch of government, in the form of the Texas Department of Criminal Justice, Correctional Institutions Division, which is tasked with carrying out his lawful execution, do so in a manner that would constitute "cruel and unusual punishment[ ]" as prohibited by the Eighth Amendment to the United States Constitution,[10] or "cruel or unusual punishment" as

3. *Id.* at 1537.

4. *Ex parte Alba,* 256 S.W.3d 682 (Tex.Crim. App.,2008); *Ex parte Chi,* 256 S.W.3d 702 (Tex.Crim.App.2008).

5. Tex.Code Crim. Proc. art. 11.071.

6. Tex.Code Crim. Proc. art. 11.071, § 5. *See Ex parte Hopkins,* 160 S.W.3d 9 (Tex.Crim.App. 2004) (Price, J., dissenting to denial of stay of execution).

7. *Ex parte O'Brien,* 190 S.W.3d 677, 684 (Tex. Crim.App.2006) (Price, J., dissenting to lifting of stay of execution), *citing Ex parte Kerr,* 64 S.W.3d 414, 418 (Tex.Crim.App.2002).

8. *Peyton v. Rowe,* 391 U.S. 54, 58, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

9. *Ex parte Patterson,* 740 S.W.2d 766, 770–73 (Tex.Crim.App.1987). *See also Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ("Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (internal citations and quotations omitted); *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]") (internal citation and quotation omitted).

10. U.S. Const. amend. VIII. In *Baze v. Rees, supra,* 128 S.Ct. at 1533, the plurality acknowledged that, "failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride."

prohibited by Article I, § 13 of the Texas Constitution.[11] Surely we would not sit idly by and allow the applicant to be drawn and quartered, if that were the method that the Director of TDCJ–CID [the Director] chose to carry out his execution, since such a method would unquestionably constitute cruel and unusual punishment.[12] Yet today the Court declares that we are powerless to invoke our habeas corpus authority to halt such an unconstitutional implementation of an otherwise lawful warrant of execution because the *method*

of execution, unconstitutional though it may be, does not effect the "fact or the length of confinement."[13] I find this holding intolerable.[14]

A death-row inmate does not serve a specific length of sentence; he is confined until he is either executed, commuted, or exonerated. It makes little sense in this context to analyze habeas corpus cognizability in terms of the "fact or length" of confinement. The convicted capital murderer who has been legitimately sentenced to death has no liberty interest in the

11. TEX. CONST. art. I, § 13.

12. *In re Kemmler*, 136 U.S. 436, 446, 10 S.Ct. 930, 34 L.Ed. 519 (1890) ("if the punishment prescribed for an offense against the laws of the State were manifestly cruel and unusual, as burning at the stake, crucifixion, breaking on the wheel, or the like, it would be the duty of the courts to adjudge such penalties to be within the constitutional prohibition."). Such forms of "superadded" execution unquestionably violate the Eighth Amendment. *Baze v. Rees, supra,* 128 S.Ct. at 1556–59 (Thomas, J., concurring).

13. *Ex parte Alba,* 256 S.W.3d at 685.

14. Should the Director choose to carry out an execution in a manner that patently violates the Eighth Amendment or Article I, § 13, such as those mentioned in *Kemmler, supra,* he would likely be subject to the writ of mandamus or prohibition. But with new technology comes new methods, such as electrocution, lethal gas, or lethal injection, and it will not be so obvious whether these new methods unduly prolong the execution or inflict reasonably avoidable pain. New methods are not susceptible to relief in mandamus or prohibition proceedings unless and until they are definitively declared unconstitutional. For this reason, I agree with the plurality in *Chi* that the applicant's application for writ of prohibition should be denied.

(I disagree, however, that the reason it should be denied is that his "Eighth Amendment claim has no merit[.]" *Ex parte Chi,* 256 S.W.3d at 704. I do not know whether his claim has merit or not, and neither can the plurality without first litigating it. The Court declares that our protocol for lethal

injection is "materially indistinguishable" from Kentucky's, citing Chi's own application for writ of prohibition. *Id.,* at 703 & n. 2. This is a disingenuous reading of Chi's pre-*Baze* pleading. In that pleading, filed at the time of his impending execution, Chi alleged that the Texas lethal injection protocol is "materially indistinguishable" from that which the Supreme Court had just agreed to review. The Court now treats this statement as a kind of post-*Baze* concession that the particular Texas protocol for administering the first anesthetic drug is "substantially similar" to the one approved by the Supreme Court. But that was not the applicant's assertion at all! The applicant claimed that the *overall* lethal injection protocols were "materially indistinguishable." One can hardly blame him for making such a general claim at the time. He simply meant that he should not be executed so long as the overall three-drug protocol was under Supreme Court scrutiny. The Court grievously errs to interpret the applicant's initial pleading in this way, and then, on the basis of that misinterpretation, to simply declare that his Eighth Amendment claim is "has no merit.")

But a death-row inmate should still have some extraordinary avenue to test the constitutional validity of a novel method of execution. Because he retains a residual liberty interest in not being executed in a manner that violates the Eighth Amendment or Article I, § 13, the writ of habeas corpus ought to be made available to him. Any other holding, in my view, would suspend the writ, in violation of Article I, § 12. TEX. CONST. art. I, § 12 ("The writ of habeas corpus is a writ of right, and shall never be suspended."); TEX.CODE CRIM. PROC. art. 1.08 (same).

sense that he can ever expect to be free from confinement, so long as he lives. Indeed, he does not even retain a "life" interest that is sufficient to overcome the State's legitimate interest in extinguishing it, consonant with due process. The one substantive constitutional right he unquestionably retains, however, is the right, when the time comes, to be executed in a humane manner. I cannot accept that the Great Writ should not be an available remedy for the applicant to raise an Eighth Amendment challenge to the manner of his execution on the ground that it does not impact the "fact or length" of his confinement, which is incidental, but only the manner of his execution.

Article 11.071 of the Code of Criminal Procedure "establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death." [15] If the Director's purported authority for subjecting a death-row inmate to a lingering and torturous death is the warrant of execution, which in turn is authorized by the mandate of this Court following affirmance of a trial court's judgment imposing the death penalty, then any "relief" the inmate seeks on account of the obvious

Eighth Amendment violation would be relief from that judgment. It may not constitute absolute relief in the sense that it would absolve the inmate from imposition of the ultimate penalty of death. But it would constitute relief from the unlawful implementation of an otherwise lawful penalty and release the inmate from the incremental encroachment upon his liberty interest in not being put to death in an inhumane manner. A valid judgment and sentence of death authorizes an execution, but it does not (and could not under any circumstances) authorize a cruel and unusual execution. [16] For this reason I would hold that the applicant's claim is cognizable under Article 11.071.

For the proposition that to be cognizable a post-conviction habeas claim must challenge the "fact or the length or confinement," [17] the plurality cites *Ex parte Lockett*. [18] *Lockett*, in turn, cites only a habeas corpus practice manual. [19] The manual cites nothing at all for this proposition. It does go on to say: "The Court of Criminal Appeals has held that without some form of confinement, you can't invoke Art. 11.07." [20] And it is true that in 1987, in *Ex parte Renier*, [21] the Court held that some form of "confinement" was a necessary prerequisite to obtaining relief under Article 11.07. [22] However, as the

---

**15.** Tex.Code Crim. Proc. art. 11.071, § 1.

**16.** By comparison, suppose an inmate were unlawfully confined beyond the term of punishment imposed by the lawful judgment authorizing his incarceration. Suppose further that the reason for his unlawful continued confinement was that the Director had miscalculated the amount of time he had served. Would we say that a habeas corpus application filed by this inmate to secure his release was not available to him because his continued confinement, although unlawful, was no longer due to the original judgment, but to the Director's mistake, and that he therefore was not seeking "relief from a felony judgment imposing a penalty other than death" for purposes of Article 11.07, Section 1? It seems to me that as long as the Director believed he was justified in incarcerating the inmate on authority of the judgment, we

would afford relief under Article 11.07. Should we not likewise make "relief" available under Article 11.071 should the Director mistakenly believe that the judgment of conviction and sentence of death authorized him to draw and quarter a death-row inmate?

**17.** *Ex parte Alba*, 256 S.W.3d at 685.

**18.** 956 S.W.2d 41 (Tex.Crim.App.1997).

**19.** *Id.* at 42, *citing* J. Jasuta, *et al.*, *Texas Criminal Writ Practice* 88 (1997).

**20.** Jasuta, *supra.*

**21.** 734 S.W.2d 349 (Tex.Crim.App.1987).

**22.** *Id.* at 353 ("[U]nless an applicant is confined pursuant to a commitment for a felony

practice manual also points out, the Legislature amended Article 11.07 in 1995. In that amendment the Legislature explicitly defined "confinement" to mean "confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus."[23] It is doubtful, therefore, that literal confinement is even a prerequisite to post-conviction habeas relief under Article 11.07 anymore, much less a showing that a claim effects the "fact or length" of confinement. And in any event, the Court made it clear in *Renier* that, but for another available post-conviction habeas forum to challenge a "restraint" less than confinement, the legislative limitation on post-conviction habeas corpus that was then found to be embodied in Article 11.07 would have constituted an unconstitutional suspension of the writ.[24] For these reasons, the Court today would do well to abjure any literal application of the "fact and length of confinement" language of *Lockett* to reject habeas cognizability to a claim that challenges a restraint upon a liberty interest, but has nothing to do with literal "confinement."

There are other cases in which the Court has held that a purported habeas corpus application that does not challenge "confinement" does not state a cognizable claim. The plurality cites one[25]—*Ex parte Kerr*.[26] In *Kerr*, the purported writ did not challenge the conviction or death sentence of the applicant, but instead raised claims about the constitutionality of the procedures prescribed by Article 11.071 itself. Had we agreed with all of Kerr's arguments, we still would have had no basis to grant him habeas corpus relief, either from his conviction or his death sentence. In fact, Kerr alleged no unconstitutional restraint whatsoever that could be said to be a product of his capital conviction, never mind restraint that would rise to the level of "confinement." The same could be said about *Ex parte Baker*.[27] There we held that claims challenging the adequacy of counsel in Chapter 64 hearings for post-conviction DNA testing are not cognizable under Article 11.07 because such proceedings do not result in additional or independent "confinement" beyond that which flows from the initial conviction, which was not challenged. As in *Kerr*, the purported habeas corpus application identified no "restraint" of any degree, much less confinement, that resulted on account of Baker's Chapter 64 attorney's alleged ineffectiveness and therefore stated no cognizable claim. By contrast, as I have already shown, each of the instant applicants has alleged a definite restraint upon his liberty interest in avoiding a cruel and unusual punishment. We cannot deny them *some* habeas corpus forum without effectively suspending the writ.

conviction, a postconviction application for habeas corpus relief from collateral consequences of another conviction will not lie under Article 11.07.")

**23.** Jasuta, *et al., supra, citing* Article 11.07, § 3. *See* Acts 1995, 74th Leg., ch. 319, § 5, p. 2771, eff. Sept. 1, 1995. This was the same legislative act that introduced Article 11.071. Nothing in Article 11.071 predicates the availability of relief expressly on "confinement."

**24.** 734 S.W.2d at 353. The Court held that, because Renier could still apply for a writ of habeas corpus to challenge his restraint-less-

than-confinement in the district court under Article V, § 8 of the Texas Constitution, the Legislature did not unconstitutionally suspend the writ under Article I, § 12, by prohibiting him from applying for a writ of habeas corpus under Article 11.07. *Id.*

**25.** *Ex parte Alba,* 256 S.W.3d at 685.

**26.** 64 S.W.3d 414 (Tex.Crim.App.2002).

**27.** 185 S.W.3d 894 (Tex.Crim.App.2006). *See also Ex parte Suhre,* 185 S.W.3d 898 (Tex. Crim.App.2006); *Ex parte Reyes,* 209 S.W.3d 126 (Tex.Crim.App.2006).

The plurality also seems to rely, by analogy, upon the opinion of the Supreme Court in *Hill v. McDonough*[28] for the proposition that claims that do not implicate the "fact or the length" of confinement are not cognizable in habeas corpus.[29] Even the plurality concedes, however, that *Hill* was not concerned with whether claims challenging the method of execution are cognizable in a federal habeas corpus petition.[30] The question in *Hill* was whether a challenge to the method of execution goes to the "core" concerns of federal habeas corpus—"the lawfulness of confinement or ... particulars affecting duration"—such that it *must* be raised, if at all, in habeas corpus proceedings and may *not* be brought in a civil-rights lawsuit under 42 U.S.C. § 1983.[31] This distinction between "core" claims that go to the "fact or duration of the confinement" and mere "conditions" or circumstances of confinement had its genesis in *Preiser v. Rodriguez*.[32] The *ratio decidendi* of that opinion was comity. An inmate should not be allowed to bypass the state-court exhaustion requirement inherent in federal habeas corpus proceedings by raising challenges to the fact or duration of his confinement in a civil-rights lawsuit. Such claims, the Supreme Court held, although they fall within the ambit of the broad language of Section 1983, must nevertheless be brought under the more specific provisions of the federal habeas corpus statute, 28 U.S.C. § 2254. Otherwise, an inmate could forego bringing his challenge in state court altogether by couching it in terms of a federal Section 1983 civil-rights lawsuit and moving straight into federal court, thereby defeating the manifest intent of Congress.

But this does not amount to a holding that challenges to the conditions or circumstances of confinement are not cognizable in a federal habeas corpus proceeding. To the contrary, the Supreme Court observed in *Preiser v. Rodriguez*:

> This is not to say that habeas corpus may not also be available to challenge such prison conditions. When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.[33]

Thus, Supreme Court recognized that unlawful restraint can occur even in the context of otherwise lawful custody, and such restraint may be subject to an equitable remedy via habeas corpus. The fact that *Hill*'s particular challenge to the method of his execution did not go to the "core" concerns of habeas corpus only meant that he could proceed with his civil-rights lawsuit under Section 1983. It did not mean that such a challenge was not *also* cognizable in a federal habeas corpus proceeding.

At the state level, there is no reason to defer to the interests of comity, federalism, or exhaustion of state remedies in deciding what should be cognizable under the Great Writ. There is no particular need, as there was in *Preiser v. Rodriguez*, to distinguish habeas corpus claims that

---

**28.** 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006).

**29.** *Ex parte Alba*, 256 S.W.3d at 685.

**30.** *Id.*, at 685 ("While *Hill* determined only that this type of claim did not *have* to be raised on habeas rather than that it *could not* be raised on habeas, the Court's reasoning is instructive.").

**31.** *Hill v. McDonough, supra,* S.Ct. at 2101.

**32.** 411 U.S. 475, 499, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**33.** *Id.* at 499, 93 S.Ct. 1827 (citations omitted).

challenge the fact or duration of confinement from those that challenge only conditions or circumstances of confinement in order to protect the right of the states to be the first to litigate the constitutionality of restraint of liberty. If a condition or circumstance of an inmate's confinement amounts to an incremental restraint upon his residual liberty interest that is unconstitutional, then, as I have already suggested, it would amount to a suspension of the writ to provide the inmate no habeas corpus forum to ventilate his claim. The plurality errs in relying upon *Hill* to hold otherwise.

The plurality also reasons that Article 11.071 is not available to remedy some potential *future* constitutional violation.[34] "Habeas corpus serves to remedy existing constitutional violations; it is not for claims that a statute may potentially be applied in a way that may possibly be determined to be unconstitutional in the future." [35] Apparently there has been no constitutional violation in the applicant's case because he has not yet been executed; the likelihood that he might actually *be* executed by lethal injection remains wholly speculative, the judgment of the trial court and this Court's mandate on appeal notwithstanding. Each of these applicants will be heartened to learn, I suppose, that as soon as the lethal drugs *do* begin to flow through his veins, his claim that the drugs will cause him such reasonably avoidable pain as to violate the Eighth Amendment and Article I, § 13 of the Texas Constitution will become cognizable. Although I imagine he will be somewhat disappointed to learn that we have declared his claim to be mooted by his untimely death.

Article 11.071 presently provides the exclusive procedure for the exercise of this Court's original habeas corpus jurisdiction when "the applicant seeks relief from a judgment imposing a penalty of death." [36] The Legislature is empowered by Article V, § 5(c) of the Texas Constitution to regulate the procedure by which we entertain post-conviction applications for writ of habeas corpus.[37] But in neither Article 11.071 nor Article 11.07 does the Legislature presently require a showing of restraint rising to the level of "confinement" before this Court may exercise its habeas corpus jurisdiction. Even if the Legislature did, such a substantive limitation on our original habeas corpus jurisdiction would likely constitute a suspension of the

---

**34.** *Ex parte Alba*, 256 S.W.3d at 686.

**35.** *Id.* To the extent that this assertion embraces a notion that constitutional violations that have not already been firmly established in case law are not cognizable in habeas corpus, this pronouncement, for which no authority is cited, sounds vaguely like the federal restriction on the cognizability of new claims in habeas corpus embodied in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). But the *Teague* rule is also grounded in principles of comity and deference to state courts, which have no application in state habeas corpus jurisprudence. *Cf. Danforth v. Minnesota*, 552 U.S. ——, 128 S.Ct. 1029, 1041, 169 L.Ed.2d 859(2008) ("If anything, considerations of comity militate in favor of allowing state courts to grant habeas corpus relief to a

broader class of individuals than is required by *Teague*."). I am not aware that we have ever adopted such a rule of cognizability in Texas.

**36.** *Ex parte Smith*, 977 S.W.2d 610, 611 (Tex. Crim.App.1998), *citing Ex parte Davis*, 947 S.W.2d 216, 221, 223 (Tex.Crim.App.1996) (Opinion of McCormick, P.J.) ("the Legislature clearly has intended for Article 11.071 to provide the exclusive means by which this Court may exercise its original habeas corpus jurisdiction in death penalty cases.").

**37.** *See* Tex. Const. art. V, § 5(c) ("Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus[.]"). *See also Ex parte Davis, supra*, at 223.

writ in violation of Article I, § 12. The Legislature is free to regulate the how, when, and where of our original post-conviction habeas jurisdiction. But I do not think that, even under Article V, § 5(c), the Legislature would ever be free to circumscribe *what* is cognizable in the Great Writ without violating Article I, § 12.

An inmate who alleges that the proposed method of his execution would be cruel and unusual has stated a claim of unconstitutional "restraint" that emanates directly from "a judgment imposing a penalty of death."[38] His claim falls comfortably within the ambit of the statute. It makes no sense for the Court, especially at the present time, to impose a "fact or length of confinement" limitation upon the applicant's cruel and unusual punishment claim.

## DUE PROCESS AND DUE COURSE OF LAW

No fair-minded citizen approves of the execution of an innocent man. As judges, we are only a little less appalled at the prospect of executing a man without due process of law. We should be equally hesitant to execute a man in a manner that would violate his Eighth Amendment guarantee against cruel and unusual punishment. We are expected to insist upon all ordinary process to protect against such an unpalatable result.

As the Court acknowledges,[39] the applicant has alleged, *inter alia*, that the first, anesthetic drug is not adequately administered under our lethal-injection protocol. He has thus stated a claim that, if true, would seem to entitle him to relief under *Baze*.[40] Moreover, because a challenge to the particular method of execution was not yet ripe at the time these applicants filed their initial applications for writ of habeas corpus, those claims were factually unavailable at that time and may be brought in a subsequent writ application.[41] When a claim in a subsequent writ application states facts which, if true, would entitle the applicant to relief, and also includes a pleading of facts sufficient to establish that

38. Tex.Code Crim. Proc. art. 11.071, § 1.

39. *Ex parte Chi*, 256 S.W.3d at 704 ("Chi's maladministration claim focuses on the possibility that the first drug in the lethal injection protocol, sodium thiopental (also known as Pentathol), will not be properly administered.").

40. Thus, the applicant's subsequent writ application does not fail to satisfy Article 11.071, Section 5, because it does not state facts sufficient to make out a prima facie case of a federal constitutional claim, as was the case in *Ex parte Staley*, 160 S.W.3d 56 (Tex.Crim.App.2005).

41. Tex.Code Crim. Proc. art. 11.071, § 5(a)(1) and (e) (subsequent habeas application must contain specific facts sufficient to establish that "the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual ... basis for the claim was unavailable on the date the applicant filed the previous application[.] * * * [A] factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) of the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.").

We recently held, in a near-unanimous opinion, that a lethal-injection challenge was not "ripe" on direct appeal, since there was no execution date and the "method in which lethal injection is currently administered is not determinative of the way it will be administered at the moment of appellant's execution." *Gallo v. State*, 239 S.W.3d 757, 780 (Tex.Crim.App.2007). By this reasoning, the factual basis for these applicants' challenges to the lethal-injection protocol could not have been "ascertainable through the exercise of reasonable diligence" at the time their initial writ applications were filed, since any execution would still likely be a number of years away, and the protocol could change during the interim. Indeed, in more recent filings challenging the lethal-injection protocol, we have been advised that the protocol was amended as recently as May 30th of this year!

the subsequent writ application is not abusive, Article 11.071 contemplates that it be returned to the convicting court where the writ issues as a matter of law, and the convicting court can proceed with whatever factual development it deems appropriate, at its discretion.[42]

Now that the Supreme Court has provided the applicable standard, we should allow the litigation to proceed in accordance with the statutory scheme. It should be easy enough to litigate whether the Texas protocol for lethal injection, as actually implemented by the Director of the Texas Department of Criminal Justice, Correctional Institutions Division, passes Eighth Amendment muster. There can be only two outcomes to such litigation, if it is allowed to proceed on the merits. Either (after adequate discovery and factual development below) our protocol (as implemented) will be deemed substantially similar to Kentucky's, and hence, constitutional, or it will be found lacking in some respect (probably involving the procedures for assuring that the first drug is adequately administered). If we find substantial similarity, that will end the litigation—in this and, presumably, every other capital writ that raises the issue, so long as the protocol is maintained and followed. If not, then the Director should know how to modify the protocol to achieve a constitutionally acceptable method of lethal injection, and the matter will be put to rest soon enough. It is only a matter of time. Still, the plurality denies the applicant a state forum to develop the issue, though his pleading is sufficient.[43] I am at a loss to understand why.

Apparently the Court will not tolerate actual litigation of the issue if that means the death machine meanwhile must stand idle. But we cannot fix the machine while the cogs are turning. I would maintain the stays of execution in these causes and return them to their respective district courts for ordinary factual development. Because the Court does not, I am compelled to dissent.[44]

---

42. TEX.CODE CRIM. PRO. art. 11.071, § 6(b) ("If the convicting court receives notice that the requirements of Section 5 for consideration of a subsequent application have been met, a writ of habeas corpus, returnable to the court of criminal appeals, shall issue by operation of law."); § 9(a) ("To resolve the issues, the court may require affidavits, depositions, interrogatories, and evidentiary hearings and may use personal recollections.").

43. It may be that inmates facing imminent execution by lethal injection in Texas can bring a claim in our state civil courts that our protocol violates the Eighth Amendment under the *Baze* standard—I do not know. But even if such a civil forum is available to death-row inmates in theory, that forum will prove quite impractical for most. Few such lawsuits brought in civil court will be amenable to final resolution prior to the scheduled execution dates. This Court has held that neither the district courts nor the courts of appeals in Texas have jurisdiction in a civil case to enter an order enjoining an execution. *State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 396 (Tex.Crim.App.1994).

Because this Court refuses to exercise habeas corpus jurisdiction, and because the civil courts cannot enjoin executions even if they can entertain challenges to the lethal-injection protocol, dozens, perhaps even scores, of death-row inmates may eventually be executed before the matter could be resolved on the civil side of the docket. And in the event that the civil courts should eventually conclude, in a lawsuit that is commenced years in advance of any scheduled execution date (and assuming the civil courts do not declare such a suit "unripe" for adjudication, as this Court has done, *see* note 41, *ante* ), that our protocol is not sufficiently similar to Kentucky's to survive constitutional scrutiny, we will have meanwhile executed that many death-row inmates in a cruel and unusual manner.

44. These are not the knee-jerk sentiments of a bleeding heart. As a district-court judge for ten years, I presided over capital murder trials and imposed the death penalty without reservation when the law required it. But capital habeas applicants are entitled to due course of the law. *Ex parte Ramos*, 977 S.W.2d 616 (Tex.Crim.App.1998). And it is

JOHNSON, J., filed a dissenting opinion in which HOLCOMB, J. joined.

The federal courts have returned this case to us so that applicant may exhaust his state remedies on a claim of an Eighth Amendment violation. Our response is to close all avenues for review. When a claim of constitutional dimension is raised, there simply must be a mechanism for considering it on its merits.

Because this is a death case, our options include the statutory writ of habeas corpus pursuant to Article 11.071 of the Texas Code of Criminal Procedure, the constitutional writ pursuant to Article V, § 5, or a writ of prohibition. Judge Price has set out the case for the statutory writ, Judge Cochran has set out the case for the constitutional writ, and in *Ex parte Chi*, 256 S.W.3d 702, (2008), Judge Hervey has set out the case for the writ of prohibition. None of the options suit this situation well. In this context, however, due process of law requires access to some form of habeas corpus; the writ of prohibition is unsuited to be the mechanism of choice.

The requirements of a writ of prohibition, as for a writ of mandamus, are that there be no adequate remedy at law and either that the duty to do or not do is ministerial or that the applicant has a clear right to the relief he wants. Many times each year we issue remand orders that recite that the applicant has stated facts that, *if true*, would entitle him to relief. The critical issue is, of course, "if true." We remand for a hearing because, at the time we issue the remand order, we do not know if the applicant's allegations are, in fact, true. Due process demands that we make an effort to determine where truth lies.

*Chi, Alba,* and all the other cases being held for them, hang on a single issue—the constitutionality of the Texas lethal-injection protocol—that has never been subject to a hearing of any kind. Certainly the Texas protocol is similar to the Kentucky protocol in the kind of drugs administered and some of the training standards for executioners and dissimilar in other ways, such as the amount of each drug used. Remaining at issue is whether the Texas protocol has safeguards that are at least at the level of Kentucky's practices-approved by Chief Justice Roberts and excoriated by Justice Ginsberg. Due process requires that there be, in at least one case, a hearing that considers the Texas safeguards to determine whether they pass muster. Without a hearing, we cannot say whether applicant does or does not have a clear right to relief.

At this point, we cannot say whether applicant's allegations, *if true,* entitle him to relief. To dismiss them without a hearing of any kind by saying that his claims have no merit turns the writ of prohibition into a door to a brick wall. Given the recent decision of the United States Supreme Court in *Baze v. Rees,* — U.S. ——, 128 S.Ct. 1520 (2008), applicant is unlikely to prevail on the merits, but the likelihood of prevailing on the merits should not determine how we deal with the claims. It is likely that, some time in the future, we will again be faced with claims that do not fit neatly into one of the usual boxes. Discerning now how this claim can be heard on the merits will be of value to this Court when that day comes. I respectfully dissent.

---

almost axiomatic that death is a different kind of punishment, requiring a higher degree of reliability, and that, where the death penalty is involved, more process is due, not less. *E.g., Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).